## Morrison v. Carbide and Carbon Chemicals Corporation.

May 30, 1939.

E. Poe Harris for appellant.

Martin & Smith and Blue, Dayton & Campbell for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Frank H. Morrison is appealing from a judgment sustaining a demurrer and upon his failure to further plead dismissing his petition as amended against the Carbide and Carbon Chemicals Corporation. In the original petition it is alleged in substance that appellant was employed by appellee and both had agreed to and were operating under the Workmen's Compensation Law, Kentucky Statutes, Section 4880 et seq.; that on or about November 18, 1936, while engaged in his work as

748

a carpenter he sustained an accidental injury arising out of and in the course of his employment resulting in hernia; that he and appellee thought he was permanently, partially incapacitated for carpenter's work but that he was able to work as a member of appellee's electrical force; that in settlement of all claims that he might have against appellee they entered into an agreement in form approved by the compensation board whereby he accepted compensation at the rate of $15 per week for a period of 7 weeks, which agreement was approved by the board; that in addition thereto appellee agreed to employ him in its electrical department so long as he was able to work, at the prevailing rate of wages; that under such additional agreement he did work for appellee in its electrical department until about May 4, 1937, when appellee refused to furnish him other work or employment or pay him further compensation or wages; that he had made diligent efforts to obtain other employment but had been unable to do so or to earn wages except a total of approximately $40; that since appellee had breached the contract it had been paying employees in its electrical department 91 cents per hour with time and a half for overtime; that by reason of matters alleged he was entitled to recover partial or temporary damages or compensation at the rate of 91 cents per hour from May, 1937, to the time of the filing of the action or a total of $1201.20 less a credit of $40 for which sum he prayed judgment.

In his amended petition he alleged that at the request of appellee he submitted to a hernia operation performed by a doctor furnished by it; that because of improper diagnosis and treatment upon the part of the physician furnished by appellee he was forced to and did undergo two other operations which delayed his recovery so that he was unable to resume work for 13 weeks instead of the 7 weeks as assumed by the parties when they entered into the agreement, approved by the Compensation Board; that it was in adjustment or settlement of his claims for compensation under the provisions of the compensation act and in adjustment, compromise and settlement of his right of action at law for damages that he and appellee executed the writings that were submitted to and approved by the board and made the compromise settlement mentioned in the original petition the basis of his action.

It is not alleged in the petition as amended that the

collateral, oral agreement sued on was submitted to or approved by the compensation board.

The question presented for determination is whether an action at law may be maintained upon the alleged oral, collateral agreement. It is the contention of appellant in effect that such a contract is not expressly or impliedly forbidden by the compensation law and that it does not run contrary to any decisions of this court nor to public policy; and that appellant has a right of action at law for its enforcement. Counsel for appellee take the contrary view and maintain that such contracts are forbidden by the Workmen's Compensation Law and have come under condemnation of this court as being against the express provisions of the law and the public policy thereby declared. Most, if not all, of the cases cited and relied on by counsel for appellee relate to contracts, agreements or compromises whereby the liability of the employer to the employee was attempted to be lessened in violation of Section 4889, Kentucky Statutes, which reads:

"No contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this act, except as herein provided."

Counsel for appellant argues, however, that those cases are inapplicable and do not sustain appellee's contention because the quoted section of the statutes does not forbid a contract more favorable to the employee than he is entitled to under the compensation law even though it is not approved by the board. It is true that the section relates solely to contracts or agreements having the effect of relieving employers in whole or in part of any liability to the employee created under the provisions of the law. However, Section 4931 of the Statutes must not be overlooked. That section provides in substance that the employer and the employee may reach an agreement conforming to the provisions of the act and if they do so same shall be filed with and if approved by the board shall be enforceable in the same way as is provided for the enforcement of an award of the board; and further provides:

"Nothing herein shall prevent the voluntary payment of compensation in the amounts and for the periods herein prescribed without formal agree-

ment, but nothing shall operate as a final settlement except a memorandum of agreement filed with and approved by the board in accordance with this section or the expiration of the time limit hereinbefore prescribed in Section 4914.''

For a proper understanding of the questions presented for determination it is necessary to look not only to the express provisions of the compensation law but to the causes that led to its enactment, its spirit and purposes and the ends sought to be attained. A lengthy discussion of those matters would be mostly unnecessary restatement of a subject already thoroughly covered by courts and text writers. It is sufficient to say that our compensation law is neither cumulative nor supplemental to the common law with respect to personal injuries growing out of industrial occupations. It practically abolished the common law relating to the subject of tortious liability as between the employer and the employee and that abolition carried with it the harsh and as often applied, inhuman rules of assumed risk, fellow servant and contributory negligence which an old school of thought and economics had engrafted into the common law. It was in effect a compromise between the employer and the employee to avoid the expense, vexatious delay and uncertainty of actions at law; and for its superior advantages to them, both surrendered some rights under the common law. However, it was enacted not only for their benefit but in the public interest since the costs of maintenance of courts fell upon the public and the injured, indigent employee and his dependents often became public charges. Under the modern, more humane and enlightened conception, growing out of the long controversy and thought, and embodied in the act, liability is no longer dependent upon negligence, tortious conduct, contributory negligence or assumed risk, but as between an employer and employee who bring themselves within the terms of the act, the former, however blameless he may be, is nevertheless liable to the employee for accidental injury arising out of his employment. By the act the state has declared a public policy the wisdom of which is no longer a matter of doubt. It provides a method of speedy, inexpensive determination of the rights and liabilities as between the employer and the injured employee who come within its provisions and clearly bespeaks a purpose and intention to make the method and procedure prescribed exclusive.

In Eversole v. Eversole, 169 Ky. 793, 185 S. W. 487, 489, L. R. A. 1916E, 593, it is said:

"* * * When the Legislature speaks within the limits of the Constitution, its declaration of public policy is conclusive. If a change in that policy is desired, application must be made to the Legislature, and not to the judiciary, whose function it is to declare the law, but not to make it."

A contract made in contravention of public policy is unenforceable and void. Modern Woodman of America v. Hurford, 193 Ky. 50, 235 S. W. 24, 21 A. L. R. 1340. See also Workmen's Compensation Board v. Abbott, 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789. The latter case grew out of a contract lessening the liability of the employer, but it was held in effect that compromise settlements could only be entered into with the approval of the compensation board. In addition to the parts of the act hereinbefore quoted it is provided in part in Section 4882, Kentucky Statutes:

"Whereas [when], at the time of the injury both employer and employee have elected to furnish or accept compensation under the provisions of this act for a personal injury, received by an employee by accident and arising out of and in the course of his employment, or for death resulting from such injury, within two years thereafter, the employer shall be liable to provide and pay compensation under the provisions of this act and shall be released from all other liability whatsoever. * * *"

The only exception made to that or the other specific provisions is in cases where injury or death of an employee results through deliberate intention of the employer to produce same and in which event resort may be had to courts of law.

While the status of employer and employee by which rights of the parties are determined had its inception in the contract of employment, they both submitted themselves to the provisions of the act when they elected to operate and work under it and their rights and obligations were thenceforth to be measured and determined by it. Under the act adjustment of claims of this character can only be made by the compensation board or by agreement of the parties, approved by the board. The remedy provided by the act for accidental injuries is exclusive and to permit actions of this char-

acter would result in practical nullification of the act and defeat its very purposes for which it was enacted. If appellant was wrongfully or fraudulently induced to accept an award of the board for compensation less than that to which he was entitled under the law he might upon proper motion or application have the claim reopened and further considered by the board. Black Mountain Corporation v. Swift, 241 Ky. 333, 43 S. W. (2d) 1008.

However, appellant claims that the agreement which he seeks to enforce was not only in settlement and compromise of compensation but alleged in effect that his injuries were aggravated and his recovery delayed because of improper diagnosis and treatment by physicians furnished by the company; but the malpractice or negligence of such physician does not afford a cause of action against appellee. Right of action if any would be against the physician.

Section 4885, Kentucky Statutes, relating to treatment by physicians furnished by an employer in part provides:

> "No action shall be brought against any employer subject to this act by an employee or other person to recover damages for malpractice or improper treatment received by such employee from any physician, hospital or attendant thereof"

and it has been held that an employee cannot maintain such an action against his employer. See Lanham v. Himyar Coal Corporation, 218 Ky. 55, 290 S. W. 1039. We conclude that appellant failed to state a cause of action in either his original or amended petitions and therefore the demurrer was properly sustained.

Judgment affirmed.