## DISHMAN v. UNITED STATES.
### Civ. A. No. 4951.

United States District Court
D. Maryland, Civil Division.
Oct. 20, 1950.

A. Freeborn Brown, Bel Air, Md., Jos. O. Kaiser, Kenney & Kaiser, Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., James B. Murphy, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a suit for personal injuries arising under the Federal Tort Claims Act,

28 U.S.C.A. § 1346(b) and §§ 2671–2680. The case has been heard on the pleadings and evidence. The findings of fact follow:

1. The United States Veterans Administration maintains a large hospital at Perry Point in Cecil County, Maryland, situated on or near the Susquehanna River. There are about 18 hospital buildings and appurtenant structures covering about 500 acres of ground. The patient population numbers about 2,000 with official personnel consisting of doctors, nurses, aides and other attendants of about 1200.

2. The plaintiff, a married man with three children himself a veteran of the recent world war, had been employed as an aide or patients' attendant at the hospital for three or four years before the occurrence of which he complains. His salary was at the rate of $2700 annually. He was on an eight-hour shift of duty which, at the time of the occurrence, was from 12 midnight to 8 A.M. For several days prior to July 5, 1949, he was troubled by a soreness in and about his left ear. On July 2nd he mentioned this to the doctor who was the Officer of the Day who, after some slight inquiry, said that there was apparently nothing seriously wrong with the ear and suggested that he see the medical officer who gave professional attention from time to time in proper cases to the personnel of the hospital. Thinking that it would probably be inconvenient to find the personnel doctor over the long July 4th week-end holiday, the plaintiff deferred further attention to his ear until the morning of July 5th just after his tour of duty had ended. He then spoke to one Allen who was the supervisor of the aides and asked for and, as he says, obtained a written form which referred him with a brief statement of his complaint to Dr. Stalio Imprescia, the doctor for the personnel of the hospital. On reporting to him the latter sent for an audioscope to examine the infected ear and after doing so said that there seemed to be nothing seriously wrong although the ear was a little red and that the trouble seemed to be merely a pimple in the ear. He was told to lie down and the doctor then poured a solution into his left ear which immediately caused a very severe burning sensation. He at once complained and the doctor quickly washed out the ear with water. The severe pain continued. The plaintiff asked the doctor what he had put in his ear and was told that it was carbolic acid. Dr. Imprescia promptly took the plaintiff to see Dr. Malinowski, the official eye, ear and throat specialist at the hospital.

3. As a witness Dr. Imprescia testified that the administration of carbolic acid was due to an unfortunate mistake in selecting the wrong bottle from the medicine cabinet. In the cabinet there were two bottles of about the same size and appearance, one labelled "phenol-glycerine 2% solution" and the other marked simply "Phenol". The doctor was reaching for and intended to use only the 2% solution of phenol-glycerine but his attention was unfortunately momentarily diverted from the correct bottle and by mistake he took down the bottle marked simply "Phenol" (that is, carbolic acid).

4. The plaintiff was carefully examined by Dr. Malinowski and hospitalized off and on for about ten days during which he suffered considerable pain from time to time. The effect of the use of the carbolic acid was that the ear drum was punctured and about half of it destroyed. The result is that the plaintiff has a 32% loss of hearing in the left ear. In the year that has elapsed since the occurrence the ear drum has healed to the extent of about one-half but is not likely to entirely heal. The plaintiff presently suffers no particular pain or discomfort, has at least normal hearing in the right ear and seemed to have little or no difficulty as a witness in hearing and answering questions in court. His hearing is not likely to be further impaired provided care is used in bathing to prevent penetration of water into the inner ear through the partially open ear drum.

5. The plaintiff was given necessary leave of absence and from time to time treated as an out-patient. He has lost no salary or wages as a result of the accident. He is not disqualified from performing ordinary activities to which he was accus-

tomed prior to the accident. He is still employed at the hospital.

I conclude as a matter of law that the defendant is liable in this case and that $1500 will be a fair compensation for the plaintiff for the injuries sustained.

To recover under the Act the plaintiff must prove that his injuries were due to (1) negligence; (2) by an agent of the United States; (3) acting within the scope of his employment (line of duty); (4) under circumstances where the United States if a private person would be liable to the claimant in the same manner and to the same extent (5) in accordance with the law of the State of Maryland.

Under the facts found in this case it is clear that the plaintiff's injury was due to negligence. This is really not disputed.

In my opinion the injury was also caused by an agent of the United States. 28 U.S.C.A. § 2671 provides: " 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

Counsel for the defendant contends that the personnel doctor in the instant case was acting not as an agent of the United States but as an independent contractor, and in support of that view cites certain judicial decisions in other jurisdictions where, under the particular facts, it was held that free medical service tendered to employees of a corporation by referring them to competently selected doctors did not subject the employer to liability by reason of the rule of respondeat superior. See 56 C.J.S., Master and Servant, § 165, p. 820; Big Stone Gap Iron Co. v. Ketron, 102 Va. 23, 45 S.E. 740; Virginia Iron, Coal & Coke Co. v. Odle's Adm'r, 128 Va. 280, 105 S.E. 107; Morrison v. Carbide & Carbon Chemicals Corporation, 278 Ky. 746, 129 S.W.2d 547; Schneider v. New York Tel. Co., 292 N.Y.S. 399, 249 App.

Div. 400, Id., 276 N.Y. 655, 13 N.E.2d 47; Metzger v. Western Md. R. Co., 4 Cir., 30 F.2d 50. But it is not an absolutely universal rule in negligence law that an employer is always free from liability by the negligence of a doctor rendering free medical service in such situations. See Restatement of Agency, § 223, comment A; Knox v. Ingalls Shipbuilding Corp., 5 Cir., 158 F.2d 973; Stuart Circle Hospital Corporation v. Curry, 173 Va. 136, 3 S.E.2d 153, 124 A.L.R. 176; Collins v. Hertfordshire County Council, K.B.Div. (1947) 1 All Eng.L.R. 633. More importantly a considerable number of federal judicial decisions under the Act have held expressly or impliedly that the United States may be liable for the negligence of a medical doctor employed by the United States for professional services in a government hospital while acting within the scope of his authority. Jefferson v. United States, D.C. Md., 77 F.Supp. 706, affirmed 4 Cir., 178 F.2d 518; Griggs v. United States, 10 Cir., 178 F.2d 1; Santana v. United States, 1 Cir., 175 F.2d 320; Perucki v. United States, D.C.Pa., 76 F.Supp. 34, Id., D.C., 80 F.Supp. 959; Cannon v. United States, D.C.Cal., 84 F.Supp. 820; Costley v. United States, 5 Cir., 181 F.2d 723. The holding of these cases in general is that the United States is liable for negligence of such an agent or employee provided he is acting within the scope of his employment and provided, as in Jefferson v. United States, supra, the plaintiff does not have a special relationship to the government which makes the Act inapplicable to him. It is significant that the defense of independent contractor was not raised by the United States in these cases.

The more critical question in the instant case is whether the hospital doctor was acting within the scope of his employment. The applicable regulation with regard to the scope of employment of the doctor here is found in section 9661, Rules and Procedure of the Veterans Administration which reads as follows: "Emergency medical treatment only, by full time personnel while on duty, may be given employees of the Veterans Administration.

Upon termination of the medical emergency the employee, unless entitled to treatment as an ex-member of the armed forces of the United States, will be instructed to procure such further treatment as is necessitated from other sources. Minor ailments, such as colds, headache, indigestion, etc. may be treated if it permits employees to remain on duty, or would be in the interest of general health conditions in an office (such as the treatment of a cold). Chronic conditions or injuries will not be treated, employees being instructed that if treatment is desired they should consult their private physicians. The utmost discretion and judgment will be used in determining whether an employee should be given emergency treatment or treatment for minor ailments. The instructions in this paragraph will place no limitations on treatment of employees injured in line of duty."

■ The evidence is clear and satisfactory that it had long been the administrative practice under this regulation in this and other veterans' hospitals to treat apparent minor ailments of the official personnel free of charge, in order to avoid even temporary interruption of their services. The plaintiff's situation put him in this category. His ailment was considered a minor one and likely to yield to prompt and only temporary treatment. It was not considered a chronic condition. The requirement in the next to the last sentence that "utmost discretion and judgment" should be used with respect to requested treatment for minor ailments was evidently inserted to avoid the undue consumption of the time of the medical staff and the consequent expense to the government in the treatment of physical ailments of the official personnel not caused in the performance of their duties.

In Cannon v. United States, D.C.Cal., 84 F.Supp. 820, the plaintiff was a medical secretary or clerk employed in an Army hospital who was injured by the alleged negligence of an Army surgeon. The holding that the United States was not liable in that case was put on the ground that the surgeon was not acting within the scope of his official employment because the plaintiff was not, under any applicable statute or regulation, entitled to receive the free medical or surgical attention. The case is therefore distinguishable from the instant case where under the applicable regulation the plaintiff was so entitled. It may be observed, however, that under the facts of the Cannon case the regulation here involved would not have been broad enough to authorize the gratuitous medical services.

Counsel have not referred to, and I am not aware of, any Maryland decision dealing specifically with a situation clearly analogous to the present case. It is true that the Maryland decisions, quite similar to the general law, are to the effect that a hospital conducted as a charitable or eleemosynary institution is not liable to suits for negligence by the medical personnel; but this is not due to any peculiar doctrine of negligence but rather to the exemption status of such corporation. It has not been urged that the United States should be likened in the instant case to a charitable or eleemosynary corporation, and in fact it has been held in at least one federal decision that such a contention was not sound. Perucki v. United States, D.C.Pa., 76 F.Supp. 34, 35. The closer analogy would be one where a hospital is conducted by private persons, as for instance possibly a doctor or by surgeons as a private enterprise. In such a case the proprietors of the hospital would, I think, be clearly liable to a patient admitted for treatment if an injury were caused by negligence of the attending physician, surgeon or other employed attendants in the course of their employment. Knox v. Ingalls Shipbuilding Corporation, 5 Cir., 153 F.2d 973.

■ Counsel for the defendant also relies upon one of the specific exceptions from liability contained in the Act. Sec. 2680 of title 28 provides that section 1346 (b) shall not apply to: "(a) Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an em-

ployee of the Government, whether or not the discretion involved be abused." This exception is not applicable here. This is not a case in which in the exercise of discretion or judgment the officials of the Veterans Hospital declined to give the plaintiff treatment, but it is a case where having exercised their discretion to give the treatment, in accordance with the applicable regulations, the treatment given was negligent. It was so held in Costley v. United States, 5 Cir., 181 F.2d 723. See also Griggs v. United States, 10 Cir., 178 F.2d 1, 3. The final contention of counsel for the defendant is that the plaintiff's exclusive remedy was under the Federal Employees Compensation Act, 5 U.S.C.A. ch. 15, § 751 et seq. Section 751 provides: "The United States shall pay compensation as hereinafter specified for the disability or death of an employee resulting from a personal injury sustained while in the performance of his duty, * * *." Section 757 provides that where the Compensation Act is applicable it shall be exclusive and by the Act of October 14, 1949, ch. 691, § 303(g) its exclusive application was made retroactive. It is not disputed by counsel for the plaintiff that the amendment would have been applicable to this case if the plaintiff's personal injury had been sustained "while in the performance of his duty". It is, however, correctly I think, contended that the facts make it quite clear that the plaintiff's injury was not due in any way to his employment as an aide at the Perry Point Hospital. The condition of the plaintiff's ear before his treatment by the personnel doctor arose from ordinary conditions affecting his personal health, entirely unrelated to his employment as an aide. As illustrative, see Volk v. City of New York, 284 N.Y. 279, 30 N.E.2d 596; Stables v. General Motors Corporation, 315 Mich. 654, 24 N.W.2d 524. Doubtless many other cases to the same effect could be cited arising under numerous workmen's compensation statutes.

For all these reasons I conclude that the plaintiff is entitled to a judgment in the amount of $1500, and the clerk is instructed to enter the judgment accordingly.