Bernice CAPPS, Plaintiff,

and

Liberty Mutual Insurance Company, Intervening Plaintiff,

v.

HERMAN SCHWABE, INC., Defendant and Third-Party Plaintiff,

v.

HICKORY SPRINGS MANUFACTURING COMPANY, Third-Party Defendant.

Civ. A. No. C–82–0026–0(M).

United States District Court, W.D. Kentucky, Owensboro Division.

Feb. 3, 1986.

Holbrook, Gary, Wible & Sullivan by William E. Garry III and Lizbeth Ann Tully, Owensboro, Ky., for defendant and third-party plaintiff.

Robert G. Hunt, Henderson, Ky., and Cole, Harned & Broderick by John David Cole, and John D. Minton, Jr., Bowling Green, Ky., for third-party defendant.

### MEMORANDUM OPINION

MEREDITH, District Judge.

This indemnity action presents the Court with a most important question concerning Kentucky Workers' Compensation law: Whether an employer's liability to indemnify a third-party tortfeasor is limited by Kentucky Revised Statute 342.690(1) to the amount of workers' compensation benefits payable by the employer to the injured employee?

**1354**

The Kentucky Supreme Court had previously reserved this question in *Burrell v. Electric Plant Board of Franklin, Ky.,* 676 S.W.2d 231, 237 (Ky.1984), since the issue was not properly before the Court. The question is presently before this Court on the parties' pre-trial request for a ruling, since the resolution of this issue would obviate the necessity and expense of a trial. For all practical purposes, this amounts to a motion for summary judgment on behalf of Hickory Springs Manufacturing Co. This Court has jurisdiction by virtue of diversity of citizenship pursuant to Title 28, United States Code, Section 1332.

This case originated as a personal injury, products liability action. In her complaint filed January 28, 1982, plaintiff, Bernice Capps, sought to recover from the defendant, Herman Schwabe, Inc., here the third-party plaintiff, for injuries received when her arm was caught in an industrial press manufactured by Schwabe. The machine had been purchased from Schwabe by Capps' employer, Hickory Springs Manufacturing Company, here the third-party defendant. Capps was injured in the course of her employment with Hickory Springs. Capps alleged negligent manufacture, strict liability and breach of express and implied warranties.

Liberty Mutual Insurance Company, Hickory Springs' workers' compensation carrier, intervened to assert its rights under Kentucky Revised Statute 342.700 to subrogation. Schwabe impleaded Hickory Springs for purposes of contribution, and under the common-law indemnity theory expressed in *Brown Hotel Co. v. Pittsburgh Fuel Company,* 311 Ky. 396, 224 S.W.2d 165 (1949), in order to recover all or part of any judgment awarded against it. Schwabe subsequently entered into a settlement agreement with Bernice Capps and Liberty Mutual whereby Schwabe paid $36,418.00 to Liberty for its subrogation claim and $123,582.00 to Capps in full settlement of her claim. Capps released Liberty Mutual from all future claims for workers' compensation except for future medical expenses. Liberty Mutual released

all its subrogation claims against Schwabe and paid $100,000.00 to Schwabe on behalf of Hickory Springs, representing the total amount of workers' compensation payments potentially due.[1]

Schwabe is presently trying to recover from Hickory Springs the $160,000.00 paid to Ms. Capps and Liberty Mutual plus $27,939.14 in legal expenses and fees while crediting Hickory Springs with the $100,000.00 paid in its behalf by Liberty Mutual. Ms. Capps has been awarded workers' compensation benefits of $100.00 per week for the rest of her life. Actuarial tables indicate these benefits have a total worth of $86,944.00 with a present value of $63,663.90.

In this diversity action, this Court sits as a state trial court, *Grant v. Bill Walker Pontiac-GMC, Inc.,* 523 F.2d 1301, 1303 (6th Cir.,1975), and is "[b]ound by clear precepts of statutory construction in use in this Commonwealth ...". *Anderson v. Black & Decker (U.S.), Inc.,* 597 F.Supp. 1298, 1301 (E.D.Ky.,1984). In Kentucky this means that we must proceed on the presumption that the Kentucky General Assembly, in enacting a new statute, was aware of the relevant constitutional provisions, *Ratliff v. Fiscal Court of Caldwell County, Ky.,* 617 S.W.2d 36, 38 (Ky.1981), and that it "is acquainted with the law on the subjects on which it legislates and is informed of previous legislation and construction that it has previously received." *Manning v. Kentucky Board of Dentistry,* 657 S.W.2d 584, 587 (Ky.App.1983) (discretionary review denied). In addition, "[w]e are, when considering the constitutionality of a statute, obliged to give it, if possible, the interpretation which upholds its constitutional validity." *Ratliff,* 617 S.W.2d at 38. Keeping these precepts in mind, the Court now turns to the question at hand.

■ Schwabe has alleged and hoped to prove at trial that Hickory Springs (1) failed to add point and operational guards to the press as required by state and federal laws; and (2) used the machine in such a way as to compel its employees to insert

1. Schwabe subsequently dropped its claim for contribution.

their hands and arms into the machine to remove material from the press; and (3) that while Capps was working on the front side of the press, Hickory Springs' manager attempted to make repairs on the electrical controls on the backside, and, in some way, short-circuited the electrical safety circuits causing the press to cycle unexpectedly, cutting off Capps' arm. Schwabe contends that these three things, once proven, would establish that Hickory Springs was primarily and actively negligent while Schwabe was only secondarily and passively negligent and therefore entitled to indemnity.[2]

The touchstone case in Kentucky on indemnification is *Brown Hotel, supra.* In that case an employee of a fuel company, after delivering coal to the Brown Hotel, failed to secure a manhole cover properly. A pedestrian, who was injured stepping on the loose manhole cover, sued and obtained a judgment against both the Brown Hotel and the fuel company. The Brown Hotel and its insurer then sued the fuel company for indemnification and recovered. In *Brown Hotel* the court said that indemnification would be allowed where there were joint tortfeasors, both equally liable to the injured party, but not *in pari delicto* as to culpability between themselves. The Brown Hotel was characterized as having been passively and secondarily negligent since it merely failed to inspect and discover the dangerous situation while the fuel company was labeled as actively and primarily negligent since its employee had actually created the hazardous condition.

In *Kentucky Utilities Company v. Jackson County, R.E. Coop. Corp.,* 438 S.W.2d 788 (Ky.1968), the court was called upon to interpret Kentucky Revised Statute 342.-015(1) which was the predecessor of Kentucky Revised Statute 342.690, and which released the employer who paid workers' compensation benefits "from all other liability." Citing to *Happy v. Erwin, Ky.,* 330 S.W.2d 412 (Ky.1959), a municipal immunity case and *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932), a guest statute case, the court said "that jural rights which had become well established before the adoption of the Constitution are preserved by the Constitution." 438 S.W.2d at 790. The Court then continued: "[i]t seems clear that the common-law right of indemnity is a jural right which existed prior to the adoption of our Constitution and may not be abolished by the General Assembly." 438 S.W.2d at 790.[3] The court then determined that Kentucky Revised Statute 342.015(1) did not bar an indemnification action by a third-party tortfeasor against an employer because such an action would not have been brought "on account of" the injuries to the employee, but, instead, arose from the breach of an independent duty owed by the employer to the third party. *Id.*

In *Union Carbide Corporation v. Sweco, Inc.,* 610 S.W.2d 932 (Ky.App.1980), discretionary review denied (1981), also involving an action by a third party tort-

---

2. Hickory Springs, relying on *Montgomery Elevator Company v. McCullough,* 676 S.W.2d 776 (Ky.1984) would have us hold that in a products liability case, such as we have here, the employer/purchaser could, at the most, only be concurrently negligent with the manufacturer. However, in *Montgomery Elevator* the manufacturer was attempting to use the intervening or superseding negligence of the purchaser to defeat a recovery by a totally innocent ultimate user. Understandably the court wanted to narrow the circumstances in which an innocent ultimate user's right of recovery against a negligent manufacturer would be cut off simply because an even more negligent (and perhaps judgment proof) purchaser was also available. *Montgomery Elevator,* does serve to illustrate, however, that a manufacturer, such as Schwabe,

is going to have a difficult time establishing that it was merely secondarily and passively negligent and entitled to indemnity. *See,* Germain, *Remedies: Contribution and Apportionment Among "Joint Tortfeasors.",* 65 Ky.L.J. 285, 289–291 (1976) (there needs to be a difference in *quality* of fault and not just a gross disparity in the *quantity*).

3. While Schwabe raises Sections 14, 54 and 241 of the Kentucky Constitution as constituting a bar to any attempt to limit indemnification, its primary reliance is on Section 54 which reads as follows: "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

feasor against an employer for indemnity, the Kentucky Court of Appeals relying on *Kentucky Utilities, supra,* said "[t]he common-law right of indemnity may not be emasculated by any language or act of the legislature no matter how worded." 610 S.W.2d at 934. The Court, however, was only faced with the question of whether Kentucky Revised Statute 342.690 would allow an action for indemnity to be maintained. The court did not address the question with which we are presented in this case.

The most recent expression of the Kentucky Courts on this subject comes in *Burrell v. Electric Plant Board of Franklin, Ky.,* 676 S.W.2d 231 (Ky., 1984). In this case it was questioned whether the third party tortfeasor could even maintain an action against the employer. Kentucky Revised Statute 342.015(1) had said the employer was "released from all other liability." *Kentucky Utilities* had limited the effect of this language to contribution and had excluded its application to indemnity on constitutional grounds. 676 S.W.2d at 233. Now in *Burrell* the court was primarily concerned with establishing that Kentucky Revised Statute 342.690(1) had extended to third party tortfeasors the right to claim contribution from the employer and also the right to indemnity, at least to the extent of workers' compensation benefits payable. 676 S.W.2d at 233. The court was trying to prevent potential "windfalls" to employers since Kentucky Revised Statute 342.700 provided the employer with the statutory right to subrogation for the

amount of workers' compensation paid and without an offsetting right to contribution or indemnity a negligent employer could be unconscionably rewarded for his negligence. 676 S.W.2d at 235. The *Burrell* opinion, however, only establishes that a third party tortfeasor can recover contribution and/or indemnity up to the total amount of the employers workers' compensation liability.[4] Schwabe contends that these cases should compel the Court to find that Kentucky Revised Statute 342.690 cannot limit its right to indemnification. These cases, however, do not constitute the entire law of Kentucky on this subject.

In *Fireman's Fund Insurance Company v. Government Employees Insurance Company,* 635 S.W.2d 475 (Ky.1982), the court was faced with the question of whether a no fault insurer possessed a right of indemnity against a third party tortfeasor that was protected by Sections 14 and 54 of the Kentucky Constitution. In reaching the conclusion that the no fault insurer did not have a constitutionally protected right to indemnity, the court looked to the line of workers' compensation indemnity cases with which we are concerned with here today, and noted that it was not until *Kentucky Utilities* that it was even considered that this type of indemnity claim might be constitutionally protected. The Court said:

"Assuming, however, but without so deciding, that the general theory of indemnity as grounds for a cause of action cannot be legislated away, still the specific issue in any case is whether the

---

**4.** In *Brown Hotel* the court said that contribution was but *pro tanto* indemnity and that both were based on the idea of equalization of the burden. 311 Ky. at 401. In addition apportionment has long been allowed between joint tortfeasors in Kentucky. *See* Kentucky Revised Statutes 454.040; *Orr v. Coleman,* 455 S.W.2d 59 (Ky.1970). Thus Justice Vance, writing in dissent in *Burrell* was prompted to suggest that with the adoption of comparative negligence in *Hilen v. Hays,* 673 S.W.2d 713 (Ky.1984), that liability should be allocated according to the degree of fault. Under this approach, if the sum of the percentage of fault attributable to the employer multiplied times total damages exceeded the total workers' compensation liabil-

ity then the employee is deemed to have settled with the employer for the amount of workers' compensation. Meanwhile, the third party tortfeasor would be held responsible only for the portion of the injury caused by its negligence. 676 S.W.2d at 238. This Court is attracted by this approach since it appears to be equitable to all concerned and does not pose a threat to the financial underpinnings of the Workers' Compensation Act; *see Burrell,* 676 S.W.2d at 239, (Stephenson, J., dissenting), while avoiding potential constitutional problems. However, Justice Liebson, writing for the majority in *Burrell,* precludes the approach in his instructions to the trial court. 676 S.W.2d at 237.

facts of the case would have established a cause of action under that theory at that time. Today, for example, we behold the theory of negligence having burgeoned into liability without fault in products liability cases, but it would be absurd to contend that such liability would have been countenanced in 1891.

"The right of indemnity asserted in the Kentucky Utilities Company case was founded on facts that were strictly analogous to the situation in the Brown Hotel case. Absent the element of workmen's compensation, two parties were liable for the wrongful death, but it was the primary or active negligence of the one which had exposed the other to that liability. Whether the right of indemnity under those circumstances had developed by case-law to the point of recognition in 1891 is extremely doubtful, but we need not pursue the point here, because it is quite beyond cavil that in 1891 neither workmen's compensation nor no-fault automobile or vehicular insurance law existed. It is not possible that the kind of indemnification sought in this case could have been established as common law at the time the Constitution of this state was adopted." (Footnote omitted) 636 S.W.2d at 477.

In *Burrell*, Justice Leibson, writing for the majority, rejected the employer's contention that *Fireman's Fund* had implicitly overruled *Kentucky Utilities*. However, it appears to this Court that Justice Leibson said this only to establish that a common-law right of indemnity did exist since it was being questioned whether a third-party could even maintain an action for indemnity against the employer. 676 S.W.2d at 235–236. Had the majority intended to do anything more than acknowledge the continuing existence of the right to indemnity then they would not have been so careful to emphasize the fact that they were not addressing the question of whether this right could be constitutionally limited. Indeed, it was made quite clear that this question was not properly before the court and would not be addressed until it was. 676 S.W.2d at 237. Therefore, it remains that while *Kentucky Utilities* may not have been overruled in *Fireman's Fund*, it was greatly restricted in its scope.

Finally, in determining the constitutionality of a five year statute of limitation as it affected an action for negligence against a builder, the court in *Carney v. Moody*, 646 S.W.2d 40 (Ky.1982), rehearing denied (1983), stated:

"It is not seriously contended that the law as it prevailed in 1891 would have afforded the injured parties a remedy against the negligent builder or builders.

\*     \*     \*     \*     \*     \*

The respondents argue that because negligence was an established basis for a cause of action in 1891 all rights of action based on negligence, especially of a type recognized at the time the limitations statutes were enacted in 1964 and 1966, are constitutionally protected. This would mean, however, that every enlargement in the field of liability for negligent conduct, whether effected by statute or by decision of this court, would assume constitutional status, beyond the power of either court or legislature to overrule or repeal it. We cannot accede to that proposition. Our construction of these constitutional provisions is and should be that which leaves to the policy-making arm of government the broadest discretion consistent with their language." 646 S.W.2d at 41.

While it was said in *Kentucky Utilities* that "[i]t seems clear that the common-law right of indemnity is a jural right which existed prior to the adoption of our Constitution and may not be abolished by the General Assembly," 438 S.W.2d at 790, the court reached this conclusion relying on *Brown Hotel* and the cases cited therein. *Brown Hotel*, however, was decided in 1949. *Blocker v. City of Owensboro*, 129 Ky. 75, 110 S.W. 369 (1908) is the earliest authority cited in *Brown Hotel*, and in this case, although the theory of indemnification was recognized, it was not actually allowed. Therefore, it would appear that the *Kentucky Utilities* court reached their

1357

conclusion by looking at the common-law prior to the passage of the statute in question and like the court in *Saylor v. Hall*, 497 S.W.2d 218 (Ky.1973), failed to determine whether the facts would have given rise to a legal cause of action when the Constitution was enacted in 1891.

The earliest case on common-law indemnity sounding in torts that my research uncovered was the case of *Cincinnati, etc. R. Co. v. Louisville & Nashville R. Co.*, 97 Ky. 128, 30 S.W. 408 (1895) in which the court, while recognizing that the right to indemnity might exist, chose not to award it. However, it is not necessary that we pursue this line of inquiry. *Fireman's Fund* establishes that the type of indemnity sought in the present case would not have been available in 1891; 635 S.W.2d at 477, and *Carney* leads this Court to conclude that although the equitable right to indemnity may have existed in 1891, since the type of indemnity sought in this case would not have existed, then Sections 14, 54 and 241 of the Kentucky Constitution do not apply.

In reaching this determination this Court has also remained mindful of the *raison d'etre* of the Worker's Compensation Act. Relief to employees is intended to be broader in scope and more certain than that allowed by the common-law. The employee is given a speedy recovery when it is needed most while minimizing expensive litigation. The employer, on the other hand, incurs a liability that is limited and determinate. As one Kentucky Court has said of the statutory scheme:

It practically abolished the common law relating to the subject of tortious liability as between the employer and the employee and that abolition carried with it the harsh and as often applied, inhuman rules of assumed risk, fellow servant and contributory negligence which an old school of thought and economics had engrafted into the common law. It was in effect a compromise between the employer and the employee to avoid the expense, vexatious delay and uncertainty of actions at law; and for its superior advantages to them, both surrendered some rights under the common law.

*Morrison v. Carbide and Carbon Chemicals Corp.*, 278 Ky. 746, 750, 129 S.W.2d 547 (1939). Clearly the courts should be reluctant to tamper, especially on an ad hoc basis, with the statutory scheme, and in the case *sub judice* the economic underpinnings, of the Workers' Compensation Act. *See Burrell*, 676 S.W.2d at 239 (Stephenson, J., dissenting).

Having determined that Sections 14, 54 and 241 of the Kentucky Constitution do not apply to the situation at hand as a result of *Fireman's Fund*, there remains only the question of whether Kentucky Revised Statutes 342.690(1) acts to bar Schwabe's claim for indemnification in excess of Hickory Springs' liability for workers' compensation. Kentucky Revised Statute 342.690(1) states in part as follows:

"The liability of an employer to another person who may be liable for or who has paid damages on account of injury or death of an employe of such employer arising out of and in the course of employment and caused by a breach of any duty or obligation owed by such employer to such other *shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter* on account of such injury or death, *unless such other and the employer by written contract have agreed to share liability in a different manner.*" (Emphasis added)

■ Borrowing the words of Justice Leibson "[w]e cannot assume the change in the statute was meaningless. The new statute must be 'held to mean what it plainly expresses.'" *Burrell*, 676 S.W.2d at 234. It "plainly expresses" in the first instance that an employer's liability "shall be limited to the amount of compensation and other benefits for which such employer is liable" under the Workers' Compensation Act. Therefore, while the employer may be held liable to a third-party for contribution or indemnification, this liability is limited to the amount of the workers' compensation benefits payable. Thus, the only

question which remains to be asked in view of the plain language of the statute is: Did such other, (i.e., Schwabe) and the employer (i.e., Hickory Springs), agree by a written contract to share liability in a different manner? The answer is *no*. The Court has not been presented with a single iota of evidence anywhere that there was such an agreement. Thus, Hickory Springs' obligation "shall be limited to the amount of compensation and other benefits for which such employer is liable under this chapter." This obligation having been satisfied then Schwabe's claim should be dismissed.

This Court paraphrases the court in *Carney v. Moody, supra,* to say that while "the statutes limiting the [employer's] liability for [indemnification] may occasionally leave injured parties without a remedy, or without a solvent defendant, [this] cannot justify the courts in taking corrective measures that more appropriately fall within the prerogative of the legislature." 646 S.W.2d at 41. Ironically, the Legislature of the Commonwealth of Kentucky is now in its biennial session. If the Statute in question is to be amended it shall be done by the appropriate body, namely the Legislature, not by this Court.

An appropriate Order will be entered as of this date.