Charles PINKSTON, Appellant,

v.

TELETRONICS, INC.; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees,

Teletronics, Inc., Cross–Appellant,

v.

Charles R. Pinkston; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Cross–Appellees.

No. 98–SC–945–WC.

Supreme Court of Kentucky.

Sept. 23, 1999.

As Corrected Sept. 28, 1999.

Charles Ched Jennings, Louisville, for Pinkston.

William A. Miller, Sr., Ferreri, Fogle, Pohl, & Picklesimer, Louisville, for Teletronics, Inc.

## OPINION OF THE COURT

This workers' compensation appeal concerns several questions relative to the award of rehabilitation benefits as authorized by KRS 342.710 and KRS 342.715.

Claimant's date of birth is October 23, 1944. He was injured at work in March, 1990, when he fell through the ceiling of a

building in which he was installing a telephone system. Claimant had a GED, had studied electronics, and had a master electrician's license in West Virginia. He was awarded a 60% permanent, partial occupational disability. Claimant indicated that he wished to pursue a vocational rehabilitation program, and Drs. Reiss, Scutchfield, and Wells all indicated that claimant was an excellent candidate for vocational rehabilitation. In view of this, the Administrative Law Judge (ALJ) who considered the claim concluded that a rehabilitation evaluation was appropriate.

Claimant underwent the required evaluation and subsequently enrolled in a 22-month, full-time program in major appliance repair. There was evidence that the program had a 94% placement rate and that graduates were offered starting salaries which approached claimant's pre-injury average weekly wage. Participation in the program necessitated a 97-mile round trip from his home in Springfield to the Kentucky Vocational School in Elizabethtown for five days each week. The employer voluntarily paid approximately $1,200.00 for registration fees, books and tuition in the program but refused to reimburse claimant for mileage or to pay additional rehabilitation benefits pursuant to KRS 342.715; therefore, claimant moved to reopen the award on December 6, 1995, in order to seek those benefits.

Claimant asserted that he was entitled to reimbursement for mileage necessary to attend the vocational rehabilitation program. He also asserted that he was entitled to rehabilitation benefits pursuant to KRS 342.715 for a full 22 months of participation in the vocational rehabilitation program in addition to his permanent partial disability award. He asserted that payment of the permanent, partial disability award should be suspended during the period of vocational rehabilitation, with the balance of the award becoming payable from the termination of rehabilitation benefits. In response, the employer asserted that vocational rehabilitation benefits were limited to 52 weeks and sought credit for its voluntary payments to the extent that they covered more than 52 weeks of rehabilitation.

At reopening, the ALJ awarded rehabilitation benefits pursuant to KRS 342.715 for the 22 months of the program and mileage for the days claimant actually attended class. Payment of the partial disability award was suspended during the 22–month period that rehabilitation benefits were ordered. Pursuant to the employer's appeal and claimant's cross-appeal, the Workers' Compensation Board (Board) affirmed the order of rehabilitation benefits pursuant to KRS 342.715 but determined that they were authorized only from the date of the motion to reopen. The Board determined that rehabilitation benefits were paid in lieu of partial disability benefits during the weeks that the two awards overlapped, reversing the award in that regard.

■ The Court of Appeals determined that no "sound medical evidence" supported the extension of the 52–week rehabilitation period which was authorized by KRS 342.710 to 22 months. It affirmed the decision of the Board in all other respects. Claimant now appeals, and the employer cross-appeals.

On the date of claimant's injury, KRS 342.710 provided, in pertinent part, as follows:

(1) One of the primary purposes of this chapter shall be restoration of the injured employe to gainful employment. . . .

. . .

(3) An employe who has suffered an injury covered by this chapter shall be entitled to prompt medical rehabilitation services for whatever period of time is necessary to accomplish physical rehabilitation goals which are feasible, practical, and justifiable. When as a result of the injury he is unable to perform work for which he has previous training or experience, he shall be entitled to

such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him to suitable employment.... Vocational rehabilitation training, treatment or service shall not extend for a period of more than fifty-two (52) weeks, except in unusual cases when by special order of the administrative law judge, after hearing and upon a finding, determined by sound medical evidence which indicates such further rehabilitation is feasible, practical and justifiable, the period may be extended for additional periods.

(4) Where rehabilitation requires residence at or near the facility or institution, away from the employe's customary residence, reasonable cost of his board, lodging or travel shall be paid for by the employer or his insurance carrier.

KRS 342.710(3) authorizes medical rehabilitation services of unlimited duration in order to accomplish "feasible, practical, and justifiable" physical rehabilitation goals. In contrast, the vocational rehabilitation services which are provided are more limited. KRS 342.710(3) authorizes an ALJ to order vocational rehabilitation of more than 52 weeks' duration only after conducting a hearing and upon "sound medical evidence" that further rehabilitation is "feasible, practical, and justifiable." A worker who participates in a rehabilitation program of more than 52 weeks' duration, without prior approval, clearly does so without the assurance that the entire program will be compensable. We observe, however, that nothing in KRS 342.710 provides that benefits are forfeited unless approval is obtained before enrollment in a vocational rehabilitation program of more than 52 weeks' duration. We observe that claimant entered the program after undergoing the required rehabilitation evaluation, that the employer voluntarily paid for the program until claimant moved to reopen, that there is no indication that the program was not feasi-

ble, and that the ALJ determined with the benefit of hindsight that the program was "reasonable, practical, and justifiable." Considering claimant's age and his occupational and educational background, we are persuaded that the medical evidence offered in the initial claim was sufficient to support the ALJ's determination that the 22–month vocational rehabilitation program in which claimant participated was compensable. Accordingly, we reverse the decision of the Court of Appeals in that regard.

■ KRS 342.710(4) authorizes the reasonable cost of "board, lodging or travel" where rehabilitation requires residence at or near a facility which is away from the worker's customary residence. Here, claimant could not avail himself of the vocational rehabilitation services to which he was entitled without making a daily commute of 97 miles. We conclude, therefore, that because the training facility was a significant distance from claimant's customary residence, the payment of mileage would come within the travel expenses contemplated by KRS 342.710(4). *See C & L Construction v. Cannon,* Ky., 884 S.W.2d 647 (1994). We, therefore, affirm the award of mileage expenses for the days upon which claimant attended class.

■ On the date of claimant's injury, KRS 342.715 provided:

Notwithstanding the provisions of KRS 342.730, during the period the employe is eligible for permanent total disability benefits and is actively participating in a vocational or physical rehabilitation program, pursuant to an order of the administrative law judge, the employe's benefits shall be calculated by taking eighty percent (80%) of his average weekly wage, but not more than one hundred percent (100%) of the state's average weekly wage, times the percentage of disability as determined in this chapter.

In summary, KRS 342.715 authorizes enhanced income benefits only where the

injured worker "is eligible for permanent total disability benefits." Use of the word "eligible" connotes a present entitlement to benefits for permanent total disability. *See, Webster's New Collegiate Dictionary,* 1975 edition. The amount of the benefit equals 80% of the worker's average weekly wage (limited by the state's average weekly wage), multiplied by the percentage of disability as determined in Chapter 342. It is apparent that the Court of Appeals failed to abide by the plain meaning of the words which the legislature employed when setting forth the conditions for awarding a rehabilitation benefit and focused, instead, on the formula for computing the amount of the benefit as providing a rationale for the result which was reached. We conclude, however, that the conditions for awarding the benefit are unambiguous, and the formula for computing the benefit is compatible with those conditions. We conclude that KRS 342.715 should have been construed as plainly written and reverse the decision of the Court of Appeals to the contrary.

We recognize that there may have been sound reasons for making the enhanced rehabilitation benefits set forth in KRS 342.715 available to workers whose permanent disability is partial as well as to those whose permanent disability is total; nonetheless, it was the prerogative of the legislature to choose to provide the benefit only for the latter group. In view of the comparative value of a 425–week award and a lifetime award, it could not be said that it was absurd for the legislature to focus on reducing the number of lifetime awards for total disability. That purpose would be advanced by providing an economic incentive for totally disabled workers to seek physical and vocational rehabilitation and, thereby, to reduce the extent of their occupational disability. In instances where vocational rehabilitation was successful, a lifetime award for total disability could then be reopened by the employer and reduced.

Here, it is undisputed that the claimant is not permanently and totally disabled. Under those circumstances, KRS 342.715 does not apply to this claim. For that reason, further questions relative to the application of KRS 342.715 need not be addressed on these facts.

We conclude that claimant is entitled to be compensated for the travel expenses which the ALJ awarded. He is also entitled to be compensated for the cost of the 22–month vocational rehabilitation program, itself. Because he is not permanently and totally disabled, he is not entitled to the benefits provided by KRS 342.715.

The decision of the Court of Appeals is hereby affirmed, in part, and reversed, in part. The claim is hereby remanded to the ALJ for the entry of an award which is consistent with the foregoing.

LAMBERT, C.J. and GRAVES, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs in part, and dissents, in part, by a separate opinion in which JOHNSTONE, J., joins.

COOPER, Justice, concurring in part and dissenting in part.

I dissent from the majority opinion insofar as it extends the duration of the claimant's vocational rehabilitation benefits from fifty-two weeks to twenty-two months and awards him mileage expense (at an unspecified rate) for the ninety-seven mile daily round trip from his home in Springfield, Kentucky, to Kentucky Tech–Elizabethtown in Elizabethtown, Kentucky.

## I.

KRS 342.710(3) provides in pertinent part as follows:

Vocational rehabilitation training, treatment, or service shall not extend for a period of more than fifty-two (52) weeks, except in unusual cases when by special order of the administrative law judge,

after a hearing and upon a finding, *determined by sound medical evidence which indicates such further rehabilitation is feasible, practical, and justifiable,* the period may be extended for additional periods. (Emphasis added.)

I agree with the Court of Appeals that this statute means exactly what it says: vocational rehabilitation training is limited to fifty-two weeks absent "sound medical evidence" which would justify an extension. The ALJ based his decision to extend the rehabilitation period to twenty-two months in this case not on "sound medical evidence," but on the lay testimony of the claimant and the director of Kentucky Tech. In fact, no medical evidence at all was offered in support of the claimant's motion for an extension. The majority opinion posits that the medical proof offered during the litigation of the original claim supports the ALJ's decision. Maybe; but the original claim was litigated in 1992–93 and the present motion to reopen for extension of rehabilitation expenses was not litigated until 1996. Regardless, the medical proof which the majority claims was sufficient to support the ALJ's decision IS NOT EVEN IN THE RECORD OF THIS REOPENED CASE.

The ALJ who heard the motion to reopen was not the same ALJ who presided over the original claim. The summary of the medical evidence in the Opinion and Award of September 24, 1993 does not indicate that any of the doctors testified to a need for rehabilitation or, if so, whether vocational rehabilitation should exceed the statutory limit of fifty-two weeks. Since the ALJ's grant of an extension to twenty-two months was not supported by "sound medical evidence," it was clearly erroneous and should be set aside.

## II.

KRS 342.710(4) provides as follows:

Where rehabilitation requires residence at or near the facility or institution, away from the employee's customary residence, reasonable cost of his board, lodging, or travel shall be paid for by the employer or his insurance carrier.

This provision *prima facie* applies only when the employee is required to reside away from his customary residence. For example, the claimant in this case was injured while working in Cleveland, Ohio. If his vocational rehabilitation required him to attend a facility or institution in Cleveland instead of in Elizabethtown, Kentucky, the statute would require his employer to pay the cost of his travel to Cleveland and his room and board while he was residing there and in attendance at the facility or institution. The statute does not authorize payment of travel expenses if the employee, as here, commutes from his customary residence to the facility or institution where rehabilitation is provided. As in *C & L Construction v. Cannon,* Ky., 884 S.W.2d 647 (1994), the majority of this Court has again undertaken to provide workers' compensation benefits which the legislature has chosen not to provide.

The majority opinion does not address, and *C & L Construction v. Cannon* did not address, whether there is a point in distance where travel expenses will not be paid. The claimant in this case lives in Springfield, which he asserts is a 48.5 mile drive from Kentucky Tech. What if he lived in Glendale, which is 7.5 miles from Kentucky Tech? Would he be entitled to reimbursement for travel expenses for his fifteen mile daily commute? I live five miles from Kentucky Tech; but I live eight miles from my place of employment in Elizabethtown. Obviously, I am not entitled to be paid travel expenses for my daily *sixteen*-mile commute to and from work just because I choose not to live within walking distance of my office. But if I should need vocational rehabilitation training because of a work-related injury, I would be entitled, per the majority opinion in this case, to travel expenses for the daily *ten*-mile commute to Kentucky Tech for rehabilitation. If the claimant in this

case did relocate to Elizabethtown, would he be entitled not only to the cost of relocation, but also to mileage expenses from his new residence to Kentucky Tech?

Nor has the ALJ or the majority of this Court specified the method by which the claimant is to be reimbursed for travel expenses. Is he to be reimbursed for actual gas and oil expenses (facts which are not in this record), which fluctuate almost daily and vary according to the make and model of vehicle being driven; or is he to be paid at some unspecified rate per mile? If the latter, is he to be paid at the same rate as state employees (he was not a state employee), or at the rate which his employer pays to its employees (information which also is not in this record)? What if the employer pays different rates to executives than to hourly employees? Should reimbursement for expenses already incurred be at the rate applicable to the year of payment or at the rate applicable to the year in which the expense was incurred? These are the problems inevitably encountered when we attempt to amend a purely statutory right of action by application of common law equity principles.

Workers' compensation is a creature of statute and the remedies and procedures described therein are exclusive. *Morrison v. Carbide and Carbon Chemicals Corp.,* 278 Ky. 746, 129 S.W.2d 547, 549 (1939). When an employer and employee submit themselves to the provisions of the act, their rights and liabilities are thereafter measured by the terms of the act. *Id.,* 129 S.W.2d at 550. In this instance, the act provides for reimbursement of travel expenses only where vocational rehabilitation requires relocation to a residence at or near the facility or institution. It does not provide for reimbursement of travel expenses incurred by the employee in commuting to that facility or institution from his usual residence.

For these reasons, I would affirm the Court of Appeals' decision to set aside the ALJ's decision to grant an extension of the vocational rehabilitation period, and re-

verse its decision to uphold the ALJ's award of travel expenses.

JOHNSTONE, J., joins this opinion, concurring in part and dissenting in part.