**ZURICH INSURANCE COMPANY, Underwriters Safety & Claims, Inc., and Courier-Journal & Louisville Times Company, Appellants,**

v.

**Ada M. MITCHELL, Personal Representative of the Estate of William W. Mitchell, Deceased, Appellee.**

Supreme Court of Kentucky.

June 12, 1986.

Roy Kimberly Snell, Frank P. Hilliard, Louisville, for appellants Zurich Insurance Co.

Armer H. Mahan, Jr., Louisville, for appellant Underwriters Safety & Claims, Inc.

J. Baxter Schilling, Louisville, for appellant Courier Journal & Louisville Times Co.

Alan W. Roles, Louisville, for appellee.

E. André Busald, Florence, for amicus curiae, Kentucky Academy of Trial Attorneys.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which reversed a circuit court summary dismissal of Mitchell's complaint which sought damages in tort for the alleged outrageous conduct of the appellees in delaying the payment of certain medical expenses arising out of a worker's compensation claim.

The question presented is whether the Workers' Compensation Act provides an exclusive remedy and therefore bars an employee's tort action for separate damages because of untimely payment of certain benefits or whether such action can be the basis of a suit for outrageous conduct causing emotional distress.

Mitchell received a 100 percent permanent total disability award following an angina attack arising out of his employment with the Courier Journal & Louisville Times Company. The company and its insurance carrier began paying the benefits and expenses pursuant to the award in June 1981, but stopped payment of the medical expenses later that year. Litiga-

tion ensued and ultimately the claim was fully paid. Mitchell then sued in tort against the Courier Journal and its compensation carriers charging them with outrage and bad faith in refusing to fully pay his medical expenses under the compensation award. The circuit court granted the Courier Journal's motion for summary judgment as well as the insurance company's motions for judgment on the pleadings holding that the compensation law provided the exclusive remedy for claims arising out of a delay by an employer or insurance carrier. The Court of Appeals reversed that decision and remanded the case for further proceedings. This Court granted discretionary review.

This Court reverses the decision of the Court of Appeals because the Workers' Compensation Act provides an exclusive remedy and consequently bars an employee's tort action for separate damages due to the untimely payment of benefits. Neither the tort of outrage, nor bad faith, applies in this situation.

KRS 342.690 provides the exclusive remedy for the collection of compensation payments. An independent tort action filed by a former employee when the facts alleged demonstrate that the only conduct complained of is a delay in the payment of certain medical bills does not give rise to a claim of bad faith or outrage. Injection of a claim or cause of action based on *Feathers v. State Farm Fire & Casualty Co.*, Ky.App., 667 S.W.2d 693 (1983), is inappropriate because the Kentucky statute already provides for sanctions against "bad faith" conduct. The delay in the payment of medical bills demonstrated in this case cannot be the basis for an action for outrageous conduct pursuant to *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984).

The exclusivity of the remedies created by the Workers' Compensation Act has been and remains a fundamental legislative objective. This Court recognized that the diversion of cases involving work-related accidents from the courts to an administrative forum involved a mutual tradeoff which conferred benefits and imposed restraints on both employer and employee. *Morrison v. Carbide & Chemicals Corp.*, 278 Ky. 746, 129 S.W.2d 547 (1939). Chapter 342 applies to the adjudication of claims as well as the administration of awards. The drafters of the legislation wisely anticipated that disputes would arise in the administration of an award. Consequently, medical expenses claimed pursuant to an award are subject to the approval of the Board. KRS 342.325 confers broad authority on the Board to resolve all questions arising under this chapter if not settled by agreement of the parties. KRS 342.040 imposes a 12 percent interest penalty on delayed payments and KRS 342.990(2) authorizes the imposition of fines and imprisonment on those who violate the time requirements of the statute which is KRS 342.040. KRS 342.210 allows the Board to assess the whole cost of the proceeding against the party who brings, prosecutes or defends a proceeding without reasonable grounds. Kentucky Workers' Compensation Law provides several safeguards to insure that alleged misconduct or delay in payment by an employer or its insurance carrier can be presented quickly and appropriate relief granted, if required, by the Board or courts.

*Brown Badgett, Inc. v. Calloway*, Ky., 675 S.W.2d 389 (1984) holds that Chapter 342 gives the Board exclusive jurisdiction to determine the reasonableness of medical expenses claimed under its award as in the present case. *Brown Badgett, supra*, involved the refusal of an employer to pay a medical bill submitted by the employee on the grounds that the bill was for an expert witness fee rather than a necessary medical expense. This Court determined that the Board and not the circuit court had jurisdiction to determine the reasonableness of a claimed medical expense and the statutes require that the complaining party petition the Board to resolve the dispute.

*Brown Badgett* has been extended in *Westvaco Corporation and Fred S. James & Company v. Fondaw*, Ky., 698 S.W.2d 837 (1985) to require the complaining party to petition the Board to resolve the dispute.

While the language of the exclusive remedy provision of the statute appears clear, appellate courts from other states are divided on whether the exclusive remedy sections of a Workers' Compensation Act bar a separate tort action recovery. There are as many as three separate legal theories which have been adopted on this question. The majority view is that the exclusive remedy provisions of the law bar a separate tort action. The minority position has two sections. One minority position is that the exclusive remedy provided in the act will bar a tort claim only if the allegation in the tort claim is that there has been a delay in the payment of benefits. The other minority view is that the exclusive remedy provided in the law does not bar a separate tort action brought by an employee against his employer or its insurance carrier.

The majority view can be traced to *Penn v. Standard Accident Ins. Co.*, 4 A.D.2d 796, 164 N.Y.S.2d 618 (1957). *Robertson v. Travelers Insurance Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983), which analyses both the majority and minority positions regarding this issue. The Colorado Supreme Court has also recently reviewed this problem in the case of *Travelers Insurance Co. v. Savio*, Colo., 706 P.2d 1258 (1985). In its analysis of many of these same cases the court therein adopts the minority view. Other recent cases of interest in this field are *Harned v. Farmland Foods, Inc.*, Ia., 331 N.W.2d 98 (1983); *Sullivan v. Liberty Mutual Insurance Co.*, Fla.App., 367 So.2d 658 (1979); *Escobedo v. American Employers Insurance Co.*, 547 F.2d 544 (10th Cir.1977); *Whitten v. American Mutual Liability Insurance Co.*, 468 F.Supp. 470 (D.S.Car.1977); *Young v. United States Fidelity & Guaranty Co.*, Mo.App., 588 S.W.2d 46 (1979); *Physicians and Surgeons Hospital Inc. v. Leone*, La.App., 399 So.2d 806 (1981). Additional review can be found in Annot., 8 A.L.R.4th 902 (1981).

The legislature of Kentucky has set forth within the provisions of the act the remedy available to an employee who must then proceed either before the Board or the circuit court to obtain or collect when benefits have been denied without reasonable grounds. Clearly, an allegation that the benefits have been unpaid, whether negligently, recklessly or intentionally constitutes a denial without reasonable ground. With the exception of failing to secure the payment of benefits as provided in KRS 342.690(2) or a willful and unprovoked physical aggression, the exclusive liability provisions of the act cannot be waived. *See Brown Badgett.*

*Norrington v. Charles E. Cannell Co.*, Ky., 383 S.W.2d 137 (1964), held that non-payment of benefits does not have the effect of waiving the exclusive remedy provisions of the act. The fact that the act does not provide for pain and suffering is also no basis upon which a cause of action may lie. *Davis v. Solomon*, Ky., 276 S.W.2d 674 (1955).

Here Mitchell alleges two separate tort causes of action, outrageous conduct causing emotional distress and bad faith refusal to pay benefits. There is a significant distinction to be made with respect to the pleadings and applicable law respecting each of these separate causes of action.

The typical case in which courts have permitted a former employee to maintain a tort action against the employer involved circumstances in which the employer or the insurance company's conduct was "conspicuously contemptible." *See The Law of Workmen's Compensation* 2A, A. Larson, *Workmen's Compensation* § 68.-34(c) (1983) at pps. 13–75. A claimant cannot elevate a simple delay in payments into an actionable tort merely by using the terms fraudulent, deceitful and intentional. The exclusive remedy provided by the statute is not voided by the employer's violations because KRS 342.310 provides a remedy for untimely or delayed payments and the legislature has specified that the only exception to the exclusive remedy is for the willful and unprovoked physical aggression.

The fact that the employee brings this action does not create a separate tort claim. The rule of *Brown Badgett* as extended by

*Westvaco v. Fondaw, supra,* now provides that the complaining party must petition the Board to resolve the dispute.

The refusal to make timely payment of benefits cannot be the basis for an action for outrageous conduct causing emotional distress under *Craft, supra.* The California case of *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972) does not support a contrary result. The facts in *Unruh, supra,* meet the definition of one of those cases in which the conduct was conspicuously contemptible because private investigators were hired to investigate the claim of the employee and their conduct was reprehensible in attempting to trick and deceive the claimant into activities which resulted in a physical and mental breakdown requiring hospitalization.

In this case there were no affirmative acts of harassment. Refusing to pay, however arbitrary or unreasonable, is not misconduct of the type described in Section 46 of the Restatement (Second) of *Torts* and *Craft v. Rice, supra.*

The great majority of courts that have considered this question have refused to create a common law remedy for termination or delay of benefits. They have also refused to recognize a tort remedy for "bad faith" where a statute contains an exclusive provision and afforded express remedies for termination or delay. *See* Larson, Workmen's Compensation Law § 68.34(c) at 13–72 (1973). A comprehensive summary of these cases may be found in *Robertson, supra.*

Those cases which have allowed "bad faith" claims do not justify a departure by Kentucky from the majority rule.

*Stafford v. Westchester Fire Insurance Co. of N.Y., Inc.,* Alaska, 526 P.2d 37 (1974) does not support the position of Mitchell on bad faith because it held that the Alaska compensation law was an exclusive remedy where the employer or carrier negligently or willfully failed to make timely payments but adopted the reasoning of *Unruh, supra,* for circumstances where the conduct goes beyond the bounds of untimely payments.

Although the great majority of states with exclusive compensation plans have barred separate bad faith suits at common law, many have refused to say that an independent tort remedy is never available to a claimant oppressed by malfeasance in the administration of the award. Rather, while insisting that disputes over any kind of delay or termination of benefits proceed through the normal statutory channels, several states have held that more extreme forms of misconduct may be actionable. It is here that the judicial differentiation between the tort of bad faith and that of outrage becomes important.

The decision of the Court of Appeals ignores any distinction between bad faith and outrage. Mitchell has not stated any facts sufficient to set out a claim for the tort of outrage. None of the appellants have ever had any contact with Mitchell because the negotiations over the disputed expenses were conducted at all times by his attorney.

■ Bad faith and outrage are not synonymous. The tort of "bad faith" is specifically aimed at the intentional, willful or reckless disregard of an insured's rights.

■ Outrage as expressed in *Craft* and *Restatement of Torts* § 46 imposes liability on one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. It is likened to the criminal action of harassment. The *Craft* case involved oppressive acts such as surveillance and verbal harassment inflicted directly upon the plaintiffs by a former county sheriff. This is clearly a different factual situation from conduct which relates to the termination or delay of payments owed under a contract or judgment which are being processed through the judicial and administrative channels and are the subject of litigation.

Generally courts considering allegations of outrage in worker compensation cases have been very careful to bar such claims in the absence of extreme misconduct aris-

ing to direct harassment. *See Whitten v. American Mutual Liability Insurance Co.*, 468 F.Supp. 470 (D.S.C.1977), affirmed 594 F.2d 860 (4th Cir.1979). It was noted in that case that a summary dismissal of such an action was particularly appropriate because in that South Carolina case the legislature had provided an adequate and exclusive remedy under the Workmen's Compensation Act and its penalty provisions.

The courts of California, who pioneered the tort of bad faith, have also led the way in differentiating between outrage and the inevitable disputes that arise in the course of administering a workers' compensation law. *Unruh* is another example of conduct clearly transcending the outer limits of civilized behavior as we have noted earlier. A compensation claimant does not state a cause of action in California by merely alleging that the carrier acted in bad faith by disputing or delaying payments on his claim. *Noe v. Traveler's Insurance Co.*, 172 Cal.App.2d 731, 342 P.2d 976 (1959). Other cases in which unjustifiable conduct did not reach the status of outrage are *Robertson, supra;* and *Sandoval v. Salt River Project Agricultural Improvement & Power District*, 117 Ariz. 209, 571 P.2d 706 (App.1977). *Burlew v. American Mutual Insurance Co.*, 63 N.Y.2d 412, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984) held that a delay of five months before authorizing an operation did not amount to bad faith or outrage.

The Mitchell complaint alleges only the untimely payment of some medical expenses under a compensation award. Neither the insurance companies nor the employer caused his regular disability payments to be terminated. No one harassed, threatened or even contacted him. There were no timely steps taken to petition the Board or circuit court for the enforcement of the costs, interest and other remedies provided for by the act.

Consequently a suit for bad faith in the context of the Workers' Compensation statute is not appropriate in view of the exclusive remedies devised by the General Assembly. Application of the tort of outrage under the circumstances here is not appropriate. KRS 342.690 is the exclusive remedy for the collection of compensation payments.

The decision of the Court of Appeals is reversed and the judgment of the circuit court is reinstated.

STEPHENS, C.J., and STEPHENSON, WHITE and WINTERSHEIMER, JJ., concur.

VANCE, J., concurs in result.

LEIBSON, J., concurs in result with a separate opinion.

GANT, J., dissents.

LEIBSON, Justice, concurring.

I concur only in the results. I respectfully disagree with the *ratio decidendi.* Further, the Majority Opinion goes beyond stating what is reasonably necessary and appropriate to decide this case.

The key to this case is that the only wrongdoing alleged against the workers' compensation insurance carrier is a refusal to pay, albeit presumably arbitrary and unreasonable. There were no affirmative acts of harassment or deception. Refusing to pay, however arbitrary or unreasonable, is not in itself misconduct of the type described by the *Restatement (Second) Torts*, Sec. 46, and *Craft v. Rice*, Ky., 671 S.W.2d 247 (1984), which adopted the *Restatement.*

Arbitrary (or bad faith) refusal to pay may give rise to a cause of action on behalf of an *insured* against his insurer. But this case does not qualify as a claim by the insured against his own insurer for "bad faith" in refusing to pay. The claimant, Mitchell, was not insured by the insurance carrier/defendants. The Courier-Journal and Louisville Times Company was the insured, not Mitchell. The duty of good faith is a fiduciary type obligation of protection owed by an insurer to its insured.

The reason that in some cases we have permitted a cause of action for bad faith

against the insurer on the part of an injured claimant (a so-called third party bad faith claim) is because breach of the duty of good faith owed to the insured has resulted in a judgment against the insured in excess of the policy limits, and the insured has then assigned his rights under the policy to the injured claimant. *See Manchester Ins. & Indem. Co. v. Grundy*, Ky.App., 531 S.W.2d 493 (1975).

The reason why the present case does not qualify as a cause of action for outrageous conduct as recognized by our court in *Craft v. Rice, supra,* is because neither the insurance company nor its agents engaged in trickery, deceit or similar contemptible conduct as necessary to serve as a basis for a cause of action for outrageous conduct. Simply refusing to pay, *per se* does not qualify as the tort of outrage.

However, refusing to pay an amount due under a workers' compensation award could qualify as the tort of outrage if accompanied by other misconduct of a contemptible nature. *Unruh v. Truck Ins. Exchange*, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972), as explained by *Robertson v. Traveler's Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983).

Any person, including a claimant owed money by reason of the Workers' Compensation Act, has a cause of action for the tort of outrage when and if the refusal to pay is accompanied by other acts of misconduct of a contemptible or outrageous nature. The Workers' Compensation Act is the exclusive remedy for refusal to pay,[1] but it does not foreclose a cause of action if tortious misconduct accompanies the refusal to pay. cf. *Firestone Textile Co. Div. v. Meadows*, Ky., 666 S.W.2d 730 (1983). In this case refusal to pay is the only misconduct alleged.

---

1. The majority opinion cites *Westvaco Corp. v. Fondaw*, Ky., 698 S.W.2d 837 (1985), as holding that if the workers' compensation insurance carrier refused to pay "medical expenses claimed under [the Board's] award," then "the complaining party must petition the Board to resolve the dispute." Presumably this means the carrier who decides not to pay must petition the Board for authority to stop payment, because *Westvaco* holds:

"In the future, when an employer seeks to dispute a medical or drug bill submitted by the disabled worker, the procedure to be followed is for the employer to file a motion before the Board to reopen the award for medical expenses under KRS 342.125." 698 S.W.2d at 839.