**GENERAL ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Kenneth R. BLANK, II, Appellee.**

No. 92–CA–2548–MR.

Court of Appeals of Kentucky.

Dec. 3, 1993.

Discretionary Review Denied by Supreme Court May 18, 1994.

Gerald R. Toner, Emily A. Hoffman, O'Bryan, Brown & Toner, Louisville, for appellant.

Dale Golden, Rudloff, Golden & Evans, Bowling Green, for appellee.

Before GARDNER, HOWERTON and JOHNSTONE, JJ.

*OPINION*

HOWERTON, Judge.

General Accident Insurance Company (GA) appeals from a jury verdict and judgment of the Warren Circuit Court awarding Kenneth R. Blank, II $160,698.07 and 100 percent of the taxable court cost. In a post-judgment proceeding, the court also awarded an attorney fee of $68,000. Blank was being paid benefits for a workers' compensation claim, but when GA refused to pay for questionable surgery and stopped his temporary total disability payments, Blank filed this action in the Warren Circuit Court seeking $1,000,000 for pain and suffering, $5,000,000 for punitive damages, $3,000,000 for mental anguish, $5,575 for lost house payments, $5,200 for lost disability payments, $800 for the fair market value of a car, and $9,327.55 for medical expenses. Part of his claim was based on GA's alleged violation of the Consumer Protection Act (CPA) and the Unfair Claims Settlement Practices Act (UCSPA). The case was allowed to go to the jury, which awarded $405 for the value of the car, $5,575 for house payments, $5,200 for disability payments, $8,973.07 for medical expenses, $40,000 for mental anguish, $25,000 for pain and suffering, and $75,000 for punitive damages.

The dispositive issue presented by GA is whether the exclusive provisions of the Workers' Compensation Act preclude this action in circuit court. We agree that workers' compensation is the exclusive remedy for Blank, and we therefore reverse every award granted by the circuit court, including the

attorney fee which was not a specific issue raised on appeal. . If the court had no jurisdiction to try this case, it had no jurisdiction to do anything. GA also argues that the CPA and the UCSPA are not applicable to this action, and we agree.

The remaining allegations by GA can generally be summarized as follows: even if the CPA and the UCSPA are applicable, Blank did not prove bad faith; the instructions to the jury were erroneous; comments by the trial judge invaded the province of the jury; and the trial court improperly excluded evidence. We have no need to resolve these issues, and we decline to do so.

This saga began June 18, 1991, when Blank alleged that he hurt his back while washing out an exhaust flue at a Cracker Barrel Restaurant in Hilton Head, South Carolina. He was employed by Cone's Industrial Wash, Inc. and was treated in South Carolina and subsequently in Bowling Green, Kentucky. A Bowling Green orthopedic surgeon, Dr. Lynn Olson, reported that Blank had a history of chronic back pain dating back 20 years. When he scheduled Blank for back surgery, GA requested a second opinion. Blank was seen by Dr. John Burch, another orthopedic surgeon, who reported that Blank denied any history of back problems. Dr. Burch conducted a physical exam on August 8, 1991, and concluded that Blank's symptoms had improved since Dr. Olson had seen him, and that he should be treated conservatively with physical therapy and medication rather than surgery.

Since the medical opinions conflicted, GA sent Blank to a third orthopedic surgeon on October 9, 1991. Dr. John McInnis reviewed the records and examined Blank, and he reported that the chances of surgery improving Blank's symptoms were "probably less than 50-50." Dr. McInnis was also reluctant to recommend surgery.

Nevertheless, Blank allowed Olson to perform the surgery on November 5, 1991. GA had paid temporary total disability to Blank until November 5, at which time it stopped payments. GA also refused to pay the expense of the surgery. Blank never returned to work for Cone's, but instead obtained a job with a landscape company in May 1992.

Procedurally, Blank filed his workers' compensation claim on September 10, 1991. He filed a motion for interlocutory relief on November 27, seeking to have GA pay his surgery bills and resume payment of temporary total disability benefits. The administrative law judge (ALJ) denied this request in an order dated February 25, 1992. The ALJ believed that the employer had raised "a sufficient issue ... as to the appropriateness of the surgery undertaken."

Blank filed this tort action on January 22, 1992, alleging violation of UCSPA, KRS 304.-12–230, citing malicious, fraudulent, and oppressive conduct. Blank also alleged a breach of duty of good faith and fair dealing, breach of contract, and engaging in unfair, false, misleading, or deceptive acts in violation of CPA. KRS 367.170, .220.

In general, the Workers' Compensation Act is the exclusive remedy for the payments of lost wages and medical benefits. KRS 342.690. In *Brown Badgett, Inc. v. Calloway*, Ky., 675 S.W.2d 389 (1984), our Supreme Court held that the trial court erred in not dismissing, for lack of jurisdiction, a proceeding pursuant to KRS 342.305 for enforcement of a medical portion of an award. Citing *Brown Badgett*, our Supreme Court wrote in *Zurich Ins. Co. v. Mitchell*, Ky., 712 S.W.2d 340, 342 (1986), "With the exception of failing to secure the payment of benefits as provided in KRS 342.690(2) or a willful and unprovoked physical aggression, the exclusive liability provisions of the act cannot be waived."

The opinion in *Zurich Ins.* discusses the positions in other jurisdictions where the courts have allowed bad faith claims concerning termination or delay of benefits, noting that the majority view is that the exclusive remedy provisions of the Workers' Compensation Act bar a separate tort action. *See also* Michael A. Rosenhouse, Annotation, *Tort Liability of Workers Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due*, 8 A.L.R.4th 902 (1981). *Zurich Ins.* notes that the majority of courts considering the question have refused to create a common law remedy for termination or delay of benefits. *Id.* at 343.

Although *Zurich Ins.* does not specifically involve the CPA or UCSPA, the Court wrote that, "[r]efusing to pay, however arbitrary or unreasonable, is not misconduct of the type described in Section 46 of the Restatement (Second) of *Torts and Craft v. Rice*, [Ky., 671 S.W.2d 247 (1984) ]." *Zurich Ins.* distinguishes the situation in *Craft* where there was intentional or reckless conduct involving surveillance and harassment causing severe emotional distress. *Craft* is distinguishable from a situation involving a mere termination or delay of payments owed under a contract or a judgment which were being processed through judicial or administrative channels, such as in this case of a workers' compensation claim. Certainly, GA had just cause to question the necessity of back surgery, and its conduct simply did not rise to a level of extreme or outrageous conduct.

Finally, and possibly most importantly, in *Zurich Ins.* the Court stated that "a suit for bad faith in the context of the Workers' Compensation statute is not appropriate in view of the exclusive remedies devised by the General Assembly." 712 S.W.2d at 344. The Court declined to apply the tort of outrage to the circumstances in that case. The Court also noted that KRS 342.310 provides a remedy for untimely or delayed payments in workers' compensation claims. 712 S.W.2d at 342.

Although *Zurich Ins.* dealt with the tort of outrage, we cannot escape the analogy of Blank's allegations of "malicious, fraudulent, and oppressive acts, and unfair, false, misleading or deceptive acts." Clearly, GA does not fall into the two exceptions listed in *Zurich Ins.* There has been no willful or unprovoked physical aggression, nor did the employer fail to provide the coverage required by KRS 342.690(2). We can only interpret that statute to mean that the employer must secure payment of benefits by insurance or self-insurance, but it does not apply to failure to pay questionable benefits.

■ The question is also presented as to whether either the CPA or the UCSPA is applicable to Blank in this situation. The class of persons intended to be protected by the CPA is "[a]ny person who purchases or leases goods or services primarily for person-

al, family or household purposes." KRS 367.220. *Stevens v. Motorists Mut. Ins. Co.*, Ky., 759 S.W.2d 819, 821 (1988), provides that an insured has a statutory cause of action for bad faith insurance practices under the CPA. However, there is a specific statute that gives the insured this right to relief. With the exception of KRS 342.690(2), there is no similar statute in the Workers' Compensation Act giving a claimant the choice to pursue his claim either before the Workers' Compensation Board or in circuit court. Also, Blank is not the purchaser in this situation, but conceivably he might be considered as some third-party beneficiary. *See* for some analogy, *Skilcraft Sheetmetal v. Kentucky Machinery*, Ky.App., 836 S.W.2d 907 (1992).

Furthermore, it takes a great stretch to make the UCSPA applicable to the type of claim involved here. KRS 304.12–230 makes the UCSPA part of the Insurance Code, whereas the Workers' Compensation Act is part of the Labor and Human Rights Statutes. Different commissioners supervise the different areas of insurance and labor, and different regulations have been adopted for each. Specifically, 806 KAR 12:092 § 2(1) sets forth the standards for investigation and disposition of *life* and *health insurance* claims. This section states explicitly that it is not intended to cover claims involving workers' compensation insurance because all questions arising under KRS Chapter 342 are to be resolved by the Workers' Compensation ALJ's. While this Court is not bound by such administrative regulations in attempting to interpret the state statutes, the fact that these regulations have been adopted is some evidence of the legislature's intent.

We conclude that for us to hold that the CPA and the UCSPA are applicable to workers' compensation situations would completely wreck the concept and procedures for workers' compensation as they are now known. If such an application is ever to be established, it needs to come specifically from the General Assembly. If a claimant is denied interlocutory relief by an ALJ, and if he can then obtain a circuit court decision before his case has finally been adjudicated by the administrative agency, we would be establishing a situation for abuse of the CPA,

the UCSPA, and workers' compensation claims generally.

While we are well aware of the difficulties faced by Blank in his dealing with the employer, the insurance company, and the workers' compensation system, these were nevertheless his sources for compensation. He has circumvented the process and reaped benefits which were much greater than he could have ever obtained through workers' compensation. He recovered damages for loss of a vehicle and a home, pain and suffering, mental anguish, and even punitive damages. If we permit everyone to take his or her claims to court following a denial of interlocutory relief by an ALJ, few workers' compensation claims will ever be finalized.

The judgment of the Warren Circuit Court is reversed.

All concur.