KENTUCKY EMPLOYERS MUTUAL
INSURANCE, Appellant

v.

Hon. Eddy COLEMAN, Judge, Pike Circuit Court and Paul Tackett (Real Party in Interest), Appellees.

No. 2006–SC–000608–MR.

Supreme Court of Kentucky.

Aug. 23, 2007.

Mindy Barfield, Whitney Howard Mendiondo, Dinsmore & Shohl, Lexington, KY, Counsel for Appellant.

Eddy Coleman, Judge, Pike Circuit Court, Pikeville, KY, pro se.

Michael Fleet Johnson, Clark & Johnson, Jim G. Vanover, Vanover, Hall & Bartley, Pikeville, KY, Counsel for Paul Tackett, Real Party in Interest.

Opinion of the Court by Justice NOBLE.

This appeal is before the Court from the denial of a petition for a writ of prohibition or mandamus by the Court of Appeals. Kentucky Employers Mutual Insurance (KEMI) sought the writ to bar further circuit court proceedings on a tort action related to a workers' compensation claim, arguing that the exclusive remedy provisions of the Workers' Compensation Act barred that court from exercising jurisdiction. Because the Court of Appeals erred as a matter of law in refusing to grant the writ, its order is reversed.

## I. Background

Paul Tackett was injured at work when an eighteen-wheel coal truck he was repairing fell on him. He suffered serious injuries to his face, skull, and right upper body, which required multiple surgeries and continued to require extensive medical treatment. Mr. Tackett filed a workers' compensation claim, which was settled in November 2003. The settlement was approved by an Administrative Law Judge (ALJ) and required that KEMI pay all reasonable and necessary medical expenses incurred as a result of Mr. Tackett's work-related injury.

About ten months after the settlement, Mr. Tackett began having trouble getting

coverage for some of his medical treatment. KEMI delayed payments for some of the medications and supplies used to treat the injuries to Mr. Tackett's face, specifically his eyes and ears; at other times, KEMI refused to pay at all, leading Mr. Tackett to pay for the drugs and supplies with his own money. KEMI also required the substitution of generic versions of some drugs, though Mr. Tackett claimed they were not as effective. KEMI also ceased paying for treatment related to the injuries to the right side of Mr. Tackett's upper body. Mr. Tackett claimed that the delays, refusals to pay, and other difficulties with KEMI forced him to use his own limited resources and exacerbated his medical problems.

In response to KEMI's behavior, Mr. Tackett sought to reopen his workers' compensation claim and to compel KEMI to pay for his medical care. He alleged that KEMI's refusal to pay some medical expenses and delay in paying for others (including prescription medications, travel expenses, and medical equipment), and refusal to approve name brand drugs were in violation of KEMI's obligations under the Workers' Compensation Act. He also alleged that KEMI's actions constituted unfair claims practices. KEMI responded in part by arguing that the injuries to Mr. Tackett's right upper body were caused by a car accident after his work-related acci-

dent, thus it was not responsible for medical care for those injuries.

The case was assigned to an ALJ who held entirely in Mr. Tackett's favor. The ALJ found that the injuries to Mr. Tackett's upper body were clearly caused by the work-related accident, and required that KEMI pay for medical expenses related to the injuries. The ALJ also found that KEMI was responsible for timely payment for the prescriptions and equipment that Mr. Tackett needed. The ALJ referred the unfair claims practice claim to the Executive Director of the Office of Workers' Claims for investigation and any further action.[1] Finally, the ALJ held that KEMI had "defended unreasonably." As a result, the ALJ imposed costs against KEMI, including but not limited to deposition costs, court reporter fees, and associated expenses incurred by Mr. Tackett, under KRS 342.310. The ALJ also directed Mr. Tackett's attorney to file a motion for "the attorneys fee which he considers reasonable," and noted that a reasonable fee "shall ... be assessed against [KEMI] pursuant to 342.310." According to Mr. Tackett's brief, the ALJ's decision is currently being appealed to the Workers' Compensation Board.

Following the ALJ's ruling, Mr. Tackett filed suit against KEMI in Pike Circuit Court.[2] His complaint alleged that KEMI had engaged in bad faith in refusing to pay

---

1. In his brief, Mr. Tackett discusses the investigation of the matter by the Executive Director of the Office of Workers' Claims, though the record contains no direct information about the investigation. Mr. Tackett alleges that the Executive Director's investigation led to the issuance of a show cause order against KEMI on the grounds that there was reason to believe that it had engaged in multiple instances of unfair claims settlement practices in violation of KRS 342.267 and 803 KAR 25.240. Prior to the scheduled hearing on the matter, KEMI agreed to pay a civil fine of $9000 to settle it. The show cause order

was issued after the proceedings in this case at the Court of Appeals, as discussed below, were concluded. The civil fine agreement appears to have been made while the briefs for this Court were being prepared.

2. Bluegrass Health Network, Inc. (BHN), which reviews medical records for KEMI, was also named as a defendant in the complaint. The complaint alleges that BHN acted in concert with KEMI in its tortious conduct. BHN, however, is not a party to the writ action or this appeal.

and delaying payments for treatment of the injuries to his eyes, ears, and upper body. The complaint also alleged that KEMI's bad faith actions had worsened his injuries and required additional medical treatment. Mr. Tackett subsequently amended his complaint to include what is mistakenly described as a claim of abuse of process, alleging that KEMI's actions forced him to reopen the workers' compensation claim. However, the amended complaint also includes an allegation that KEMI's actions caused Mr. Tackett severe emotional distress.

KEMI moved to dismiss the lawsuit for lack of jurisdiction. KEMI argued that the exclusive remedy provisions of the Workers' Compensation Act extend to the insurance carrier, meaning that any claims related to the workers' compensation insurance had to be handled within the administrative framework provided by the Act. The trial court summarily denied the motion by written order with no explanation of its legal reasoning.

KEMI filed a petition for a writ of prohibition or mandamus with the Court of Appeals, claiming that the trial court, by allowing the lawsuit to continue, was acting outside its jurisdiction. The Court of Appeals found that KEMI had not provided a sufficient record to allow it to determine the legal basis of the trial court's decision. Based on this finding, the court declined to exercise its writ jurisdiction and denied the petition.

The writ proceedings having been an original action at the Court of Appeals, the current appeal to this Court followed as a matter of right. Ky. Const. § 115.

## II. Analysis

■ KEMI asks this Court to reverse the denial of the writ by the Court of Appeals. Before proceeding, it is necessary to note once again that the writs of prohibition and mandamus are extraordinary in nature, and the courts of this Commonwealth "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961).

This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters.

*Id.* This policy is embodied in a simple statement from a recent case: "Extraordinary writs are disfavored. . . ." *Buckley v. Wilson*, 177 S.W.3d 778, 780 (Ky.2005).

■ Despite this, petitions for the extraordinary writs are still common in the appellate courts. In order to facilitate review of petitions for the extraordinary writs without examining the merits of a writ claim in depth, petitioners are required to satisfy one of two tests to determine whether the remedy of a writ is even available. Those tests, which essentially break writs down into two distinct classes, are as follows:

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). KEMI claims that it is entitled to a writ under the lack of jurisdiction class.

 KEMI argues that the circuit court has no jurisdiction to hear Mr. Tackett's tort claims because they are related to his workers' compensation claim. The Court of Appeals declined to determine whether the no-jurisdiction prerequisite was met because the record did not include the circuit court's legal reasoning for denying the motion to dismiss and KEMI did not take steps to make sure that such reasoning was included in the record. This approach might be appropriate if the Court of Appeals had been charged with addressing factual findings of the trial court or a holding that was subject only to abuse-of-discretion review, but the question presented—whether the circuit court has jurisdiction—is purely a question of law, which is reviewed de novo. *Rehm v. Clayton*, 132 S.W.3d 864, 866 (Ky.2004); *see also Kentucky Labor Cabinet v. Graham*, 43 S.W.3d 247, 251 (Ky.2001) ("As the issues on this appeal are to be decided as a matter of law, our review of the Court of Appeals decision is not confined to an abuse of discretion inquiry."). While the decision whether to grant the writ lies within the discretion of the reviewing court, even if the no-jurisdiction prerequisite has been shown, that discretion is not an absolute bar to further review. It is appropriate for this Court to at least examine whether the prerequisite is met, especially when it consists of an allegation that the lower court is proceeding without jurisdiction.

 The question of jurisdiction in this matter depends largely on the Workers' Compensation Act. The Act provides the exclusive remedy for work-related injuries, assuming certain requirements, such as securing workers' compensation insurance by the employer, are met. Specifically, the first sentence of KRS 342.690(1) provides,

> If an employer secures payment of compensation as required by this chapter, the liability of such an employer under this chapter shall be exclusive and in place of all other such liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover from such employer at law or in admiralty on account of such injury or death.

Essentially, the exclusive remedy provision grants immunity for liability arising from common law and statutory claims, meaning such claims cannot be pursued in the courts of this Commonwealth. The immunity is often considered part of a bargain provided by the Act, whereby employers are made strictly liable to their employees for compensation for work-related injuries. The statute continues by extending this immunity to the employer's workers' compensation insurance carrier:

> The exemption from liability given an employer by this section shall also extend to such employer's carrier and to all employees, officers or directors of such employer or carrier, provided that the exemption from liability given an employee, officer or director or an employer or carrier shall not apply in any case where the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer or director.

KRS 342.690(1).

 The effect of this statute is that "KRS 242.690(1) and its predecessor statute shield a covered employer and its insurer from any other liability to a covered employee for damages arising out of a work-related injury." *Travelers Indemnity Co. v. Reker*, 100 S.W.3d 756, 760 (Ky. 2003). This immunity is extensive, rang-

ing from disputes over the payment for injuries of the employee, *Brown Badgett, Inc. v. Calloway*, 675 S.W.2d 389 (Ky. 1984), to allegations of tortious conduct related to dealing with the workers' compensation claim itself. *See Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340 (Ky.1986) (holding that the Act precludes a civil action against the insurance carrier for failure to pay medical expenses under either a common law "bad faith" theory or under the tort of outrage theory); *General Accident Ins. Co. v. Blank*, 873 S.W.2d 580 (Ky.App.1993) (holding that the Act precludes suit against the carrier for alleged violation of the Consumer Protection Act and the UCSPA). The rule was stated plainly in *Mitchell:* "[T]he Workers' Compensation Act provides an exclusive remedy and consequently bars an employee's tort action for separate damages due to the untimely payment of benefits." 712 S.W.2d at 341.

This principle was reaffirmed in *Reker*, where this Court again held that a civil lawsuit alleging bad faith in violation of the Unfair Claims Settlement Practices Act, KRS 304.12–230, was barred by the exclusive remedy provision of the workers' compensation statute. Part of the Court's reasoning in that case was that there are administrative remedies for a delay in payment or failure to pay: "[T]he statutory scheme of the Workers' Compensation Act ... provide[s] civil remedies for an employee who is injured by an employer's 'bad faith' refusal to settle or to make payments when due." 100 S.W.3d at 762. For example, the Court noted that KRS 342.040(1) allows the imposition of interest at the rate of 18% if the ALJ finds that a "denial, delay, or termination in payment of income benefits was without reasonable foundation." While income benefits are not at issue in this case, it is worth noting the existence of a remedy related to them in order to show the extent of the adminis-

trative remedies allowed under the Workers' Compensation Act.

More importantly, the Court in *Reker* also noted that KRS 342.310(1) allows the ALJ to assess the "whole cost" of any proceedings against a party that has "brought, prosecuted, or defended [such proceedings] without reasonable ground." The ALJ in this case did find that KEMI's defense was unreasonable and as a result ordered KEMI to pay Mr. Tackett's costs, including his attorney's fee. This shows not only that administrative remedies are available under the Act, but also that Mr. Tackett has availed himself of them. If the ALJ's findings are correct, then it is clear that KEMI acted wrongly and in bad faith in handling Mr. Tackett's claim. It is equally clear, however, that any damages from those acts must be remedied through the administrative procedures established under the Act.

It is consequently inescapable that the circuit court has no jurisdiction to entertain Mr. Tackett's tort claims. Mr. Tackett's complaint and amended complaint allege only claims based on KEMI's bad faith mishandling of the workers' compensation claim. The pleadings alone are sufficient in this case to resolve the jurisdictional question since they fail to state a claim that can be heard by the circuit court. All the claims contained in the complaint and amended complaint are properly resolved only by the Workers' Compensation Board. This means that KEMI has satisfied the no-jurisdiction prerequisite for the availability of a writ under *Bender v. Eaton, Hoskins v. Maricle*, and subsequent cases.

 The question then is whether the Court of Appeals should have granted the writ. As noted above, even when the extraordinary writs are available, the reviewing court has discretion whether to

grant them. However, after reviewing the underlying claims involved and the nature of the jurisdictional bar, it is clear that relief by way of a writ is appropriate in this case. KEMI's statutory immunity is clear. Subject matter jurisdiction issues are different than other issues because they may be raised at any time, even by the court itself. *See Commonwealth Health Corporation v. Croslin,* 920 S.W.2d 46, 48 (Ky.1996) (noting the Court's "inherent power" to raise sua sponte the issue of subject matter jurisdiction). They are all the more important when established so clearly by statute. Moreover, to allow a tort claim based on an insurance carrier's handling of a workers' compensation claim to proceed, thereby forcing the carrier to defend a suit in a court with no jurisdiction, directly undercuts the balance contained in the Workers' Compensation Act.

For the foregoing reasons, the order of the Court of Appeals is vacated and this matter is remanded for entry of a writ barring the circuit court from proceeding with Mr. Tackett's suit.

All sitting. LAMBERT, C.J.; CUNNINGHAM, MINTON and SCHRODER, JJ., concur.

SCOTT, J., dissents by separate opinion.

Dissenting Opinion by Justice SCOTT.

I must respectfully dissent from the majority opinion because it extends the holding of *Travelers Indemnity Company v. Reker,* 100 S.W.3d 756 (Ky.2003), to bar even new non-work related physical injuries, allegedly caused by the documented misconduct of the Appellant company. Such an extension violates the "jural rights" of every working Kentuckian. Ky. Const. § 14, 54, and 241.

Section 14 of the Kentucky Constitution provides, "All courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Section 54 provides, "The General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property." Section 241 provides:

> Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

"The jural right to sue for personal injury or death caused by negligence or other wrongful acts was well recognized in 1891 when our Constitution was adopted." *Perkins v. Northeastern Log Homes,* 808 S.W.2d 809, 816 (Ky.1991). "In drafting our constitutional protections in §§ 14, 54 and 241, our founding fathers were protecting the jural rights of the individual citizens of Kentucky against the power of the government to abridge such rights, speaking to their rights as they would be commonly understood by those citizens in any year, not just in 1891." *Id.* Thus, "[f]undamental fairness is part and parcel of the concept underlying the rights guaranteed to us by our constitution; and, conversely, the various sections in it protecting individual rights from legislative interference cannot be understood or applied without reference to fundamental fairness." *Id.*

I am agreeable with the proposition that "[t]he purposes of the [Workers' Compensation] Act would be defeated if independent actions to recover damages for injuries or death caused by *a compensable accident were* permitted." *Simmons v. Clark Const. Co.*, 426 S.W.2d 930, 932 (Ky.1968)(emphasis added). I cannot agree however, that an employee's default election to participate under the Workers' Compensation Act KRS 342.001, et seq., could be construed to waive his "jural rights" for a "new non-work related physical injury" allegedly caused by such misconduct as is acknowledged herein by the majority. Such a result violates the promise made in *Zurich Ins. Co. v. Mitchell,* 712 S.W.2d 340 [342] (Ky.1986), wherein we noted, "The typical case in which courts have permitted a former employee to maintain a tort action against the employer involved circumstances in which the employer or the insurance company's conduct was 'conspicuously contemptible.'" *Id.* at 342.

Consequently, in *Zurich,* we referred favorably to *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (Cal.1972),[1] by acknowledging that "[t]he facts in *Unruh, supra,* meet the definition of one of those cases in which the conduct was conspicuously contemptible because private investigators were hired to investigate the claim of the employee and their conduct was reprehensible in attempting to trick and deceive the claimant *into activities which resulted in a physical and mental breakdown requiring hospitalization.*" *Zurich,* 712 S.W.2d at 343 (emphasis added). We have now broken that promise, and have succumbed to the subtle request for a Writ that will prevent proof of an alleged new non-work

related physical injury, which in turn, would have justified the Circuit Court's jurisdiction—which we say today, does not exist.

For this proposition the majority, relies, not only upon *Zurich, supra,* but upon *Travelers Indemnity Company v. Reker,* 100 S.W.3d 756 (Ky.2003), *Brown Badgett Inc. v. Calloway,* 675 S.W.2d 389 (Ky. 1984), and *General Accident Ins. Co. v. Blank,* 873 S.W.2d 580 (Ky.App.1993). *Zurich,* of course, dealt strictly with unpaid medical bills; no injury. *Reker,* dealt only with the covered employees "worry, anguish, and embarrassment," for Traveler's failure to pay $822.16 in unpaid medical and motel bills. *Id.* at 758. *Calloway, supra,* dealt only with the reasonableness of one doctor bill, which the insurer refused to pay on the basis it was an expert witness fee, rather than a medical bill for treatment. *Id.* at 390. *Blank* also involved a work related injury and dealt with alleged violations of the UCSPA, KRS 304.12–230, and CPA, KRS 367.120, and 367.220. In *Blank,* the ALJ had previously denied the Workers' interlocutory request for relief on his surgery bills for reasons "the employer raised a sufficient issue … as to the appropriateness of the surgery undertaken." *Id.* at 581.

In ordinary circumstances, I would agree that, "[i]f we permit everyone to take his or her claims to court following a denial of interlocutory relief by an ALJ, no Workers' Compensation claims will ever be finalized." *Id.* at 583. But here, we have allegations of a new, non-work related physical injury caused by the Appellee, and allegedly backed by medical proof— not just a speculative emotional injury, or cause of action for "embarrassment."

---

**1.** The "dual capacity" doctrine enunciated in *Unruh* was abrogated by statutory amendment in 1983. Cal. Lab.Code § 3602. However, the court still cited to it as an example of "conspicuously contemptible conduct" in 1986.

Even so, a careful reading of KRS 342.690(1), confirms that the reference to "such injury or death" therein, refers only to a work-related injury. Thus, if this were a simple case of a work related injury or a failure to pay the required benefits, there could be no conflict with the Appellee's "jural rights." But such documented conduct having allegedly resulted in a new non-work related physical injury, as in *Unruh, supra,* the Appellee's "jural rights" to prove this fact under the Constitution of this Commonwealth must be recognized and this Writ should be denied until such time as this case reaches the appellate process where, upon a proper record, the real facts will have been established.

"When all else is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins.,* 450 S.W.2d 235, 237 (Ky. 1970). For the reasons aforesaid, I would affirm the Court of Appeals and deny the Writ.