**Edna BRATTON, Individually and as Executrix of the Estate of R.G. Bratton, Appellant**

v.

**CITIFINANCIAL, INC., Appellee.**

No. 2012–SC–000630–DG.

Supreme Court of Kentucky.

Dec. 19, 2013.

Errol L. Cooper, Jr., James L. Thomerson, Grasch Law, PSC, Counsel for Appellant.

Shea William Conley, Lauren Desiree Lunsford, Reminger Co., LPA, Counsel for Appellee.

Opinion of the Court by Justice KELLER.

Edna Bratton and her late husband, R.G. Bratton (the Brattons), brought suit against CitiFinancial, Inc. (Citi) alleging that Citi erroneously placed a mortgage on their property and did not release that mortgage when notified of the error. The circuit court granted summary judgment and awarded damages based on Kentucky Revised Statute (KRS) 382.365. Citi appealed, and the Court of Appeals reversed, holding that the Brattons had not given notice to Citi by certified mail as required by KRS 382.365(4). The Brattons argue on appeal before this Court that Citi had actual notice of the error, thus notice by certified mail was not mandatory. Citi argues that the statute requires certified mail or personal delivery and actual notice cannot supplant that statutory mandate. Furthermore, Citi argues that KRS 382.365 only applies to mortgages that have been "satisfied," not to mortgages that were erroneously taken. We affirm the Court of Appeals's reversal of the trial court's summary judgment, although for different reasons.

## I. FACTS

The underlying facts are not in dispute. The Brattons owned three parcels of real estate in Fayette County–2885 Liberty Road, 805 Tomahawk, and 815 Campbell Lane. On April 24, 2008, the Brattons intended to sell the Campbell Lane parcel to Boyd and Nannie Brooks (the Brookses). The Brookses financed the purchase through Citi and gave Citi a mortgage. Despite what the Brattons intended, the deed they executed conveyed not only the Campbell Lane parcel but also the Liberty

Road and Tomahawk parcels to the Brookses. Furthermore, the mortgage executed by the Brookses, which stated on its face that it encompassed only the Campbell Lane parcel, contained a description encompassing all three parcels.[1]

In July 2008, counsel for the Brattons contacted Sherry Black (Black), the manager of a Fayette County Citi branch, and advised her that there was a problem with the deed and the mortgage. Black notified her supervisors and Citi's legal department of the problem and, in November 2008, Citi prepared and filed a "Deed of Correction." This deed apparently clarified that the Brattons only conveyed the Campbell Road parcel to the Brookses. However, it apparently did not re-convey the Liberty Road or the Tomahawk parcels to the Brattons,[2] and Citi did not release the mortgage on those two parcels.

Counsel for the Brattons concluded that the Deed of Correction did not rectify the matter, but made it more complicated. Therefore, he continued to contact Black seeking a release of the mortgage. In January 2009, counsel sent correspondence indicating that the Brattons would be filing suit and seeking damages under KRS 382.365. Black forwarded this information "up the chain of command" and Citi's response was that the Deed of Correction took care of the issues. The Brattons ultimately obtained a deed from the Brookses re-conveying the Liberty Road and Tomahawk parcels; however, Citi did not release the mortgage on those parcels until after the Brattons filed suit in July 2009.

In their complaint, the Brattons set forth the facts as outlined above and sought damages based on their allegation

that Citi had violated KRS 382.365. Citi responded and, approximately one year later, filed a motion for summary judgment. It its motion, Citi argued that the provisions of KRS 382.365 only apply to mortgages that have been satisfied, not to mortgages that may have been erroneously filed. Furthermore, Citi argued that the Brattons could not rely on KRS 382.365 because they had not provided written notice by certified mail or personal delivery to Citi's principal address or to its agent for process.

The Brattons responded arguing that applying KRS 382.365 only to satisfied mortgages was nonsensical as that would leave them without a remedy. Furthermore, the Brattons argued that, because Citi had actual notice of the dispute, the Brattons were not required to comply with the notice provisions set forth in the statute.

The trial court subsequently entered an order granting summary judgment on liability in favor of the Brattons finding that actual notice was sufficient to meet the notice requirements of KRS 382.365. The court reserved on the issue of damages and did not address Citi's argument that KRS 382.365 only applies to satisfied mortgages. Citi moved the court to vacate its order arguing that the Brattons had not filed a motion for summary judgment. The court agreed, vacated the order granting summary judgment to the Brattons and entered an order denying Citi's motion for summary judgment. The Brattons then filed a motion for summary judgment, which the trial court granted. The court then scheduled a hearing on damages and, following that hearing, awarded the Brat-

---

1. There is no copy of this deed or the mortgage in the record; therefore, we rely on the parties' representations regarding the contents of these documents.

2. The Brattons introduced only the first page of the Deed of Correction into the record. Thus, we rely on the parties representations regarding the contents of this Deed.

tons $71,500.00 pursuant to KRS 382.365, pre-judgment interest in the amount of $10,499.73, attorneys' fees in the amount of $10,482.50, and costs in the amount of $681.50.

Citi appealed and the Court of Appeals reversed holding that the notice requirements in KRS 382.365 are mandatory, and the Brattons' failure to comply with those requirements was fatal to their claim. The Court of Appeals did not address whether KRS 382.365 applies to erroneously filed mortgages.

The Brattons sought discretionary review of the Court of Appeals's opinion arguing that actual notice is sufficient to comply with the notice requirements of KRS 382.365. We granted review and, as noted above, affirm the Court of Appeals's reversal of the trial court's summary judgment, but for different reasons.

## II. STANDARD OF REVIEW

The issues raised by the parties concern statutory interpretation, which is a question of law that we review de *novo*. *See Kentucky Employers Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky.2007). When interpreting a statute, the Court is to assume that the General Assembly intended the statute to mean exactly what it says. *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky.2005).

## III. ANALYSIS

KRS 382.365 provides as follows:

(1) A holder of a lien on real property, including a lien provided for in KRS 376.010, shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction.

(2) An assignee of a lien on real property shall record the assignment in the county clerk's office as required by KRS 382.360. Failure of an assignee to rec-

ord a mortgage assignment shall not affect the validity or perfection, or invalidity or lack of perfection, of a mortgage lien under applicable law.

(3) A proceeding may be filed by any owner of real property or any party acquiring an interest in the real property in District Court or Circuit Court against a lienholder that violates subsection (1) or (2) of this section. A proceeding filed under this section shall be given precedence over other matters pending before the court.

(4) Upon proof to the court of the lien being satisfied by payment in full to the final lienholder or final assignee, the court shall enter a judgment noting the identity of the final lienholder or final assignee and authorizing and directing the master commissioner of the court to execute and file with the county clerk the requisite release or assignments or both, as appropriate. The judgment shall be with costs including a reasonable attorney's fee. If the court finds that the lienholder received written notice of its failure to release and lacked good cause for not releasing the lien, the lienholder shall be liable to the owner of the real property or to a party with an interest in the real property in the amount of one hundred dollars ($100) per day for each day, beginning on the fifteenth day after receipt of the written notice, of the violation for which good cause did not exist. This written notice shall be properly addressed and sent by certified mail or delivered in person to the final lienholder or final assignee as follows:

(a) For a corporation, to an officer at the lienholder's principal address or to an agent for process located in Kentucky; however, if the corporation is a foreign corporation and has not appointed an agent for process in Ken-

tucky, then to the agent for process in the state of domicile of the corporation;

(b) For an individual, to the individual at the address shown on the mortgage, at the lienholder's residence or place of business, or at an address to which the lienholder has directed that correspondence or payoff be sent;

(c) For a trust or an estate, to a fiduciary at the address shown on the mortgage or at an address to which the lienholder has directed that correspondence or payoff be sent; and

(d) For any other entity, including but not limited to limited liability companies, partnerships, limited partnerships, limited liability partnerships, and associations, to an officer, partner, or member at the entity's principal place of business or to an agent for process.

(5) A lienholder that continues to fail to release a satisfied real estate lien, without good cause, within forty-five (45) days from the date of written notice shall be liable to the owner of the real property or to a party with an interest in the real property for an additional four hundred dollars ($400) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice, for a total of five hundred dollars ($500) per day for each day for which good cause did not exist after the forty-fifth day from the date of written notice. The lienholder shall also be liable for any actual expense including a reasonable attorney's fee incurred by the owner or a party with an interest in the real property in securing the release of real property by such violation and in securing an award of damages. Damages under this subsection for failure to record an assignment pursuant to KRS 382.360(3) shall not exceed three

(3) times the actual damages, plus attorney's fees and court costs, but in no event less than five hundred dollars ($500).

(6) The former holder of a lien on real property shall send by regular mail a copy of the lien release to the property owner at his or her last known address within seven (7) days of the release. A former lienholder that violates this subsection shall be liable to the owner of the real property for fifty dollars ($50) and any actual expense incurred by the owner in obtaining documentation of the lien release.

(7) For the purposes of this section, "date of satisfaction" means that date of receipt by a holder of a lien on real property of a sum of money in the form of a certified check, cashier's check, wired transferred funds, or other form of payment satisfactory to the lienholder that is sufficient to pay the principal, interest, and other costs owing on the obligation that is secured by the lien on the property.

(8) The provisions of this section shall not apply when a lienholder is deceased and the estate of the lienholder has not been settled.

(9) The state licensing agency, if applicable, or any holder of a lien on real property shall be notified of the disposition of any actions brought under this section against the lienholder.

(10) The provisions of this section shall be held and construed as ancillary and supplemental to any other remedy provided by law.

(11) If more than one (1) owner or party with an interest in the real property brings an action to recover damages under this section, any statutory damages shall be allocated equally among recovering parties in the absence of agreement otherwise among said parties.

The entry of a judgment awarding damages shall bar a subsequent action by any other person or entity to recover damages for the same violation.

Citi argues, as it did before the trial court and the Court of Appeals, that KRS 382.365 simply does not apply to this situation. We agree. As set forth above, an owner of real property, or a party acquiring an interest in real property, may bring a proceeding under KRS 382.365 if a lien holder has failed to release a lien within 30 days after the lien holder has received a sum of money sufficient to pay the amount owing on the obligation secured by the lien. If the lien holder, after being properly notified that the obligation has been paid or satisfied, does not timely release the lien, the court may award damages pursuant to the statutory formula. The award of damages is contingent on proof to the court that the lien has been satisfied.

Satisfaction of the lien is a threshold burden of proof that must be met before the court can award damages pursuant to KRS 382.365. In this case, there is no proof that the lien, *i.e.* the mortgage given by the Brookses to Citi, was satisfied. Therefore, the Brattons did not meet their threshold burden of proof and the trial court's summary judgment and award of damages under KRS 382.365 was in error.

■ We recognize the Brattons' argument that we should read KRS 382.365 broadly to include erroneously filed liens rather than just satisfied liens. However, "[i]t is a primary rule of statutory construction that the enumeration of particular things excludes ideas of something else not mentioned." *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 91 (Ky.2005). The legislature specifically stated that the damages awarded under KRS 382.365 apply only to liens "satisfied by payment in full." Had the legislature wanted to include erroneously filed liens under the pro-

tection of KRS 382.365, it could have done so. The legislature's failure to include erroneously filed liens within the purview of KRS 382.365 is evidence of its intent to exclude them.

We recognize the Brattons' argument that the mortgage in question was "satisfied" *ab initio* because it was erroneously filed. To interpret the statute as urged by the Brattons, we would have to ignore: the language in paragraph (1) that a release must be filed "from the date of satisfaction;" the language in paragraph (4) requiring "proof to the court of the lien being satisfied by payment in full;" the language in paragraph (5) that damages do not begin to accrue until a lien holder "fail[s] to release a satisfied real estate lien;" and the language in paragraph (7) that defines "date of satisfaction" as the "date of receipt by a holder of a lien on real property of a sum of money in the form of a certified check, cashier's check, wired transferred funds, or other form of payment." The preceding language signifies the legislative intent to ensure that mortgagees and other lien holders release liens when the debt they secure has been paid. It does not signify a legislative intent to ensure that mortgagees or other lien holders release erroneously filed liens.

Finally, we note that paragraph (10) states that the provisions of the statute are "ancillary and supplemental to any other remedy provided by law." Thus, our interpretation of KRS 382.365 does not foreclose a property owner from seeking relief through other legal avenues for the erroneous filing of a lien. It only forecloses the relief provided by KRS 382.365.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

ABRAMSON, CUNNINGHAM, KELLER, NOBLE, SCOTT, and VENTERS, JJ., sitting. All concur. MINTON, C.J., not sitting.