

# IN THE
# TENTH COURT OF APPEALS

## No. 10-10-00070-CR

**DERRICK BIBLE,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 82nd District Court
### Robertson County, Texas
### Trial Court No. 09-03-18639-CR

## MEMORANDUM  OPINION

Derrick Bible appeals from his conviction for the offense of capital murder.  TEX. PEN. CODE ANN. § 19.03(a)(7) (West 2003).  Bible was automatically sentenced to life without the possibility of parole.  TEX. PEN. CODE ANN. § 12.31(a)(2) (West 2003).  Bible complains that the trial court abused its discretion in the admission of evidence, by overruling objections to improper jury argument, and that there was insufficient corroboration of the accomplice testimony.  Because we find no reversible error, we affirm the judgment of the trial court.

*FACTS*

One evening, Bible, D'Nard Anderson, and Dameon Laws were in Hearne, Texas in search of drugs in a gold-colored four-door sedan. They approached Chandell Lewis, who was standing outside of a vehicle with Fredel Miles. Anderson asked Chandell for drugs and Chandell told him it would be a minute and drove off. Miles then acquired some drugs, which he, Bible, Anderson, and Laws smoked. Anderson spotted Clifton Lewis, the cousin of both Anderson and Chandell, and asked him where they could buy drugs. Clifton suggested that they contact Chandell, and called him for them. A short time later, Clifton called Chandell using Bible's cell phone. Anderson spotted Chandell at the designated location and Chandell told him to follow his truck. They followed Chandell to a small house. At some point prior to arriving at the house, Miles was ordered out of the car. Chandell remained in his truck and Anderson went to the vehicle, smelled the drugs, and told Bible and Laws to go to Chandell's truck one at a time, per Chandell's instructions. Bible went and got into Chandell's truck and Laws exited the gold sedan and went to stand by Harry Monson, who was standing outside of the house. Two sets of gunfire ensued, which resulted in the death of both Chandell and Monson. According to Anderson, Bible and Laws ran back to the gold sedan and said "drive off, drive off," which he did. Anderson claimed that he bumped a curb leaving the scene in the rush.

*ADMISSION OF EVIDENCE*

Bible complains that the trial court abused its discretion by overruling his request for a hearing outside of the presence of the jury to challenge the in-court

identification of Bible by two witnesses, by allowing testimony from a confidential informant that was hearsay and violated the Confrontation Clause, and in admitting cell phone records that were not properly authenticated.

*In-Court Identification*

Bible complains that the trial court erred by denying his re quest to have a hearing outside of the presence of the jury to determine the admissibility of the anticipated in-court identifications of him as the perpetrator. Bible made an oral motion in limine at the beginning of a day of testimony seeking to find out the basis of each witness's identification of Bible at the time that each witness was to be called to testify. The trial court denied Bible's motion. Bible made no further objections to the in-court identifications that were made by Miles, one of two witnesses of which he now complains. It is well established that an oral motion in limine does not preserve any error. *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2004). The portion of Bible's issue relating to Miles is overruled.

Bible's other complaint regarding improper in-court identification was prior to and during the testimony of Clifton Lewis, who was present at various times throughout the evening of the murders. The basis of Bible's objection prior to the testimony of Clifton related to the admission of a pretrial lineup that was not in the possession of the State's attorney. Bible objected to any testimony regarding that lineup on the basis of surprise and failure to disclose in discovery. The trial court sustained Bible's objection and prohibited the State from referencing that lineup during Clifton's testimony.

Later, well after Clifton had identified Bible before the jury without objection, the State began a line of questioning about a second lineup which had been presented to Clifton during the investigation. The trial court conducted a hearing outside of the presence of the jury and clarified its ruling and explained to Clifton that he was not to mention the missing lineup. Bible did not object on the basis of an impermissible in-court identification prior to Clifton's testimony, during the hearing outside of the jury's presence, or during Clifton's testimony before the jury. As such, Bible's objection at trial does not comport with his complaint in this appeal. Bible's objection to Clifton's in-court identification is not properly preserved and is waived. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (a party's "point of error on appeal must comport with the objection made at trial"). We overrule issue one (A).

*Confidential Informant Testimony*

Bible complains that the trial court abused its discretion by allowing the investigating Texas Ranger to testify to names of individuals involved in the Hearne murders that were given to him by another detective. That detective had gotten the names from a confidential informant. Bible complains that the testimony by the Texas Ranger stating the names that were given to him was inadmissible hearsay and violated his right to confrontation.

*Hearsay*

An out-of-court statement offered into evidence to prove the truth of the matter asserted is hearsay. TEX. R. EVID. 801(d). A statement not offered to prove the truth of the matter asserted, but offered for some other reason, is not hearsay. *Guidry v. State*, 9

S.W.3d 133, 152 (Tex. Crim. App. 1999); *see Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). The Court of Criminal Appeals has concluded that if a statement is introduced to explain how a defendant became a suspect or how the investigation focused on a defendant, then the statement is not hearsay because it is not offered for the truth of the matter asserted. *Dinkins*, 894 S.W.2d at 347 (holding an appointment book and patient application were not offered for the truth of the matter asserted, but instead the evidence was offered to show how the appellant became a suspect of the investigation); *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992), *abrogated on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001) (holding testimony was not hearsay because it was not offered for the truth of the matter asserted, but to explain how the police officer began to suspect the appellant, seek an arrest warrant, and finally arrest him); *see also Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi 1999, pet. ref'd) (deciding that the testimony was not being offered to prove drugs were literally being distributed, but rather to show why the officers focused their investigation on the appellants). "This type of testimony assists the jury's understanding of the events by providing context for the police officer's actions." *Cano*, 3 S.W.3d at 110.

The State's questions to the investigator were not designed to elicit hearsay testimony; instead the questions allowed the investigators to explain the process of the investigation and how Bible became a suspect. *See Dinkins*, 894 S.W.2d at 347; *Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.). Accordingly, the trial court did not abuse its discretion in overruling Bible's hearsay objections.

*Confrontation*

The Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). A primary interest secured by the Confrontation Clause is the right of cross-examination. *Id.* The Confrontation Clause bars out-of-court testimonial statements by a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The United States Supreme Court has yet to define the outer boundaries of what constitutes a testimonial out-of-court statement, but it has identified three kinds of statements that can be regarded as testimonial: (1) ex parte in-court testimony or its functional equivalent that declarants would reasonably expect to be used prosecutorially; (2) statements contained in formalized testimonial materials such as affidavits, depositions, prior testimony, or confessions; and (3) statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010). Whether a particular out-of-court statement is testimonial or not is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

The Court of Criminal Appeals has recently warned against allowing statements into evidence as "background" to justify testimony that might otherwise be hearsay to avoid a Confrontation Clause objection. *See Langham*, 305 S.W.3d at 580. However, the

Court noted that "background" evidence, though it may be testimonial, can be admissible to help give perspective to the jury. *Id*. It is the amount of detail included in the "background" evidence that becomes problematic. In this instance, although there was testimony regarding specific details of the murders given by the confidential informant to the detective and conveyed to the Texas Ranger that was presented in the hearing conducted outside of the presence of the jury, the trial court restricted the admission of the statements of the confidential informant to three names, which were then used by law enforcement to further investigate the case. The admission of the three names only was admissible for "background" evidence purposes, and its admission did not violate Bible's Confrontation Clause rights. The trial court did not abuse its discretion in the admission of the three names given by the confidential informant. We overrule issue one (B).

*Improper Authentication*

Bible complains that the trial court erred by admitting cell phone records that were not properly authenticated pursuant to rules 901 and 902 of the Rules of Evidence. There were some cell phone records from Verizon that were admitted during the trial which were properly authenticated through a live witness. Those records pertained to the cell phones that were used that night by Clifton and Chandell. No objection was made to the introduction of those records. Other cell phone records were admitted into evidence over Bible's objection that the business records were not filed with the district clerk fourteen days before trial as required by rule 902(10). TEX. R. EVID. 902(10). The records admitted from AT&T had an affidavit attached that was not signed until a date

during the trial. The Sprint/Nextel records had an unsworn affidavit attached that had been signed approximately one year earlier; however, the records were not filed with the clerk as required.

The State does not dispute that the records were not on file with the district clerk for fourteen days before the trial, but contends that their admission was harmless because Bible had copies of the records before trial. At the time of the records' admission, Bible sought and was granted a running objection to "any testimony regarding these records." The State does not complain about the scope of the running objection or contend that this error was not preserved. The admission of the inadequately authenticated cell phone records was error.

The Court of Criminal Appeals has recently expressly stated the standard required for an appellate court's determination of harm of the erroneous admission of evidence pursuant to rule 44.2(b):

> A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. But if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. In making a harm analysis, we examine the entire trial record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence. We consider overwhelming evidence supporting the particular issue to which the erroneously admitted evidence was directed—here, the "future dangerousness" special issue—but that is only one factor in our harm analysis. It is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either the appellant or the State.

*Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010) (internal citations omitted).

Using this standard, we review the entire record to determine to what degree the evidence supporting the issue to which the erroneously admitted evidence was directed, which was the connection between Bible, the accomplices, the witnesses, and the victim, was affected by the error.

During the trial, the State referred to the cell phone records often, from the opening statements through closing arguments. The witnesses, when questioned about phone numbers and calls made, were presented with the erroneously admitted exhibits to reinforce their testimony. Specifically, Miles, who used Clifton's phone to contact Chandell for Bible, Anderson, and Laws, testified that he had no independent recollection of the phone numbers involved. However, the State used the properly admitted records as well as the erroneously admitted records to establish the time line of events and to provide a connection between Bible, Anderson, Laws, Clifton, and Chandell on the night of the murders. The State provided the erroneously admitted records to Green, who was Anderson's mother, to establish that, in an attempt to reach her son, she called the number linked to Bible through the records the same night of the murders after the time the murders were committed.

During Clifton's testimony, he identified his personal cell phone number as well as Chandell's number without reference to any of the cell phone records and testified that Miles had used his phone that night to call Chandell. The records pertaining to the numbers used by Clifton and Chandell, and the calls made between them were from the properly admitted records. Clifton's testimony and the properly admitted cell phone records from his phone number showed calls from the number that Clifton attributed to

Anderson, but that was ultimately believed to be Bible's number. Clifton stated and the properly admitted cell phone records show that he called that same number after he had heard about the murders and spoke to Anderson.

An investigator then testified that the number Clifton identified as belonging to Anderson was determined to be Bible's. This determination was made because Bible's wife had made multiple calls to that number in the days preceding the murders. However, Anderson's mother testified that she had never called or knew of that number prior to the murders but had called it that night looking for Anderson. The investigator had gotten Bible's wife's cell phone number from her during the investigation. The records of Bible's wife's cell phone number were admitted to provide additional proof of the connection between her cell phone number and the cell phone number attributed to Bible. These records were part of the improperly admitted records. Further, the investigator testified that Bible had gotten a new cell phone less than a day after the murders and referenced one of the improperly admitted records to establish that fact. Additionally, the investigator testified that the old number that they attributed to Bible was never used again, as was also demonstrated by the improperly admitted cell phone records.

During argument, the State spent a significant amount of time reviewing the improperly admitted records with the jury. In the opening argument, the State argued that all of the cell phone records are "evidence that establishes his guilt." In the closing argument, the State referenced the records again but did not go into detail like the opening argument.

There is no reporter's record from voir dire, so we are unable to review that portion of the record in this analysis, and must presume that nothing occurred during voir dire that would demonstrate harm.

There was no physical evidence to link Bible to the murders. Anderson's DNA was located on the tip of a "cigar" found in the middle of the street where the murders took place. Anderson, Miles, and Clifton identified Bible as being present that night, and Anderson testified that Bible was one of the shooters. Other witnesses who observed different events of that night identified one of the individuals present as wearing a red hoodie, which was confirmed by those who identified Bible directly. The records that were properly admitted confirmed portions of Miles's and Clifton's accounts of the events of the evening. Multiple witnesses, including Anderson, Miles, and several unrelated bystanders throughout the evening's events identified a tan/gold colored vehicle, which was identified by the witnesses through photographs as being Bible's wife's gold Chevrolet Malibu.

Without those phone records in evidence, the State's case may have been less persuasive. However, we believe that the other properly admitted evidence linking Bible to the cell phone numbers of Clifton and Chandell tends to negate the likelihood that the jury's decision of guilt relied in any significant way on the erroneously admitted phone records rendered the error harmless. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004); *see also Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) ("If the fact to which the hearsay relates is sufficiently proved by other

competent and unobjected-to evidence, . . . the admission of the hearsay is properly deemed harmless and does not constitute reversible error"). We overrule issue one (C).

## *IMPROPER JURY ARGUMENT*

Bible complains that the trial court erred by overruling his objection to the improper jury argument by the State regarding: (1) the presumption of innocence, and (2) asking the jury to put themselves in the victim's place.

### *Standard of Review—Jury Argument*

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007).

"Even when an argument exceeds the permissible bounds of these approved areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (*citing Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980)). "The remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id*. (*citing Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)).

When analyzing any harm that may have been caused by an improper jury argument, we examine the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted

to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (*citing Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g)).

In analyzing the State's remarks during closing argument, we must not consider the statement in isolation; instead, we must review the closing arguments of both parties in order to determine the context in which the complained-of statements were made. *See Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996) ("The applicable legal standard of review is whether, in light of the record as a whole, there is a reasonable possibility the improper argument might have contributed to appellant's conviction.").

### *Presumption of Innocence*

In the State's closing argument in the guilt-innocence phase of the trial, the following exchange took place:

> State: Now, the presumption of innocence. The presumption of innocence is there. It's like a [sic] vail over the Defendant. They're covered with a sheet, or as I said in voir dire, it's like a glass bottle that contains the presumption, but when the State brings forth evidence and strikes that glass with a hammer, the presumption of innocence dissipates, and it's gone. When that [sic] vail is jerked off this Defendant, the presumption of innocence is gone, and I submit to you, based on the evidence that you've heard in this courtroom, the presumption of innocence has been long gone. It was gone early on, and it continued to be gone, and it never came back. The State, based on the evidence, destroyed the presumption of innocence in this case long ago. It doesn't remain with the Defendant throughout trial.

Bible:            Objection.  That's a misstatement of law.  It does remain
                  with him up to this point unless the State has proven beyond
                  a reasonable doubt.

Trial Court:  Overruled.  Proceed with your argument.

The presumption of innocence does not end when the presentation of evidence closes; instead, the presumption remains until the jury enters the jury room to deliberate.  *Miles v. State*, 154 S.W.3d 679, 681-81 (Tex. App.—Houston [14th Dist.] 2004) *aff'd*, 204 S.W.3d 679 (Tex. Crim. App. 2006) (*citing Massey v. State*, 226 S.W.2d 856, 860 (Tex. Crim. App. 1950) and *McGrew v. State*, 143 S.W.2d 946, 947 (Tex. Crim. App. 1940)).  The trial court erred when it overruled Bible's objection regarding the argument about the meaning and effect of the presumption of innocence.

Having found error, we must analyze the error for harm.  The improper argument regarding the presumption of innocence is constitutional error.  *Miles*, 154 S.W.3d at 681.  Under Rule 44.2(a), we must determine whether, beyond a reasonable doubt, the error contributed to Bible's conviction.  TEX. R. APP. P. 44.2(a).  The charge to the jury contained a paragraph which stated: "All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."  That paragraph later stated: "The law does not require a defendant to prove his innocence or produce any evidence at all.  The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of the evidence in this case."

We find that any harm from the trial court's error with regard to the presumption of innocence would have been lessened, if not altogether erased, both by the charge and by the presumption that the jury followed the instructions in the jury charge. *See Miles v. State,* 204 S.W.3d 822, 827-28 (Tex. Crim. App. 2006) (*citing Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) and *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Furthermore, although by law the presumption of innocence carries into the jury room, we recognize that it is continually rebutted and eroded throughout the trial by the presentation of contrary evidence by the State. *Miles*, 154 S.W.3d at 681-81.

In *Miles*, the Court of Criminal Appeals clarified the concept of "presumption of innocence" as follows:

> Under the Due Process Clause of the Fourteenth Amendment, an accused in state court has the right to the "presumption of innocence," i.e., the right to be free from criminal conviction unless the State can prove his guilt beyond a reasonable doubt by probative evidence adduced at trial. *Taylor v. Kentucky*, 436 U.S. 478, 483 n. 12, 485-486, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978); *Madrid v. State*, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979). When a jury is told of the presumption, it is told, in effect, to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody. *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

*Miles*, 204 S.W.3d at 825. The State never contended that it did not have the burden of proof at all times. This also reduces the likelihood that Bible was harmed by the improper statements by the State. We also note that the improper comments by the State were not referenced again, and after Bible's objection, the State moved on, which would also lessen the potential harm suffered by Bible. After a thorough review of the

record, we find beyond a reasonable doubt that the erroneous argument did not contribute to Bible's conviction.

*Placing the Jury in the Victim's Shoes*

Bible further complains of the following comments by the State during the guilt-innocence phase of the trial: "And somebody just happens to be coming out the front door of the school, walking to their car, and stops, 'What's going on?' 'Bam, bam, bam,' and down they go. It could be in the parking lot of a convenience store, it could have been me, could have been you, one of you." Bible objected that the State was improperly seeking to have the jury put themselves in the shoes of the victim. The argument of which Bible complains does not fit into any of the four categories of permissible jury argument; it is rather a plea for abandonment of objectivity. *See Brandley v. State*, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985). We agree with Bible that the trial court erred in overruling the objection.

Since we have determined that the State's argument was improper and that the trial court should have sustained Bible's objection and thus erred, we must conduct a harm analysis. We will first look at the severity of the misconduct. The State's comment came during a description of the circumstances surrounding the murder of Monson. While the error did have some severity, we find that it was not great. The comment was made in the context of the State's argument regarding one of the victims as being nothing more than an innocent bystander and suggesting it could have been any one of them. However, while Monson was not involved with the transaction between Chandell and Bible, he was at the house where drug activity was taking place

and was using drugs himself. The jury would be unlikely to place themselves in the shoes of Monson.

Secondly, we review any measures to cure the misconduct. While the trial court ultimately overruled Bible's objection, the trial court did first admonish the State to "stay within the record." Although only a slight measure that does little to cure the improper comment, nevertheless it served to mitigate the effect, if any, of the improper argument.

Third, we look to the certainty of Bible's conviction absent the improper argument. After reviewing the entire record, we find that the evidence was such that Bible's conviction was not affected by the error. We find that while the argument was improper, and thus erroneously allowed, the error was harmless. We overrule issue two.

### CORROBORATION OF ACCOMPLICE WITNESS TESTIMONY

Bible complains in his third issue that the accomplice testimony of Anderson was not sufficiently corroborated, and that when the evidence is considered without Anderson's testimony the evidence is factually insufficient.[1] Bible's convictions cannot stand on the testimony of one of Bible's accomplices unless that testimony is corroborated by other evidence tending to connect Bible with the offenses. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). To corroborate accomplice testimony, we

---

[1] We note that the factual sufficiency standard set forth in *Clewis v. State* has been overruled. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). Bible's brief on the merits was filed prior to the issuance of that decision; however, since a factual sufficiency review excluding the accomplice's testimony is not the proper standard, it is not necessary to address the factual sufficiency review portion of Bible's issue.

eliminate "all of the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (*citing Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). "The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense." *Id*. The accomplice-witness rule is of statutory origin and differs from sufficiency standards because it is not derived from federal or state constitutional principles. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

Excluding the accomplice's testimony, the corroborating evidence that favors the verdict included (1) the properly admitted cellular telephone records showing telephone calls to and from numbers tied to Bible, Clifton, and Chandell; (2) the witnesses' identifications of Bible, both through pre-trial lineups and at trial; (3) the multiple witnesses' identifications of the gold Malibu that belonged to Bible's wife as being the vehicle that was the getaway vehicle after the shootings; (4) the damage to the undercarriage of the gold Malibu as being consistent with other testimony regarding the vehicle scraping the curb while fleeing the scene after the murders; and (5) the testimony from a relative of Bible that Bible confessed to his involvement in the murders. We find that other evidence sufficiently tended to connect Bible with the offense, and, therefore, to corroborate the accomplice witness's testimony. We overrule issue three.

*CONCLUSION*

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 11, 2011
Do not publish
[CRPM]